MONTAGUE, MILES & COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87651.   Promulgated July 22, 1938.

*William H. West, Jr., Esq.*, for the petitioner.
*L. S. Young, Esq.*, for the respondent.

146

HARRON: The respondent contends that petitioner is a personal holding company under the provision of section 351 (b) (1) of the Revenue Act of 1934 and is subject to a surtax on its undistributed adjusted net income for the taxable year, together with a penalty of 25 percent of such surtax for failure to file a return for the year 1934 on form 1120–H as required by article 351–8 of Regulations 86. The applicable statute and regulations, so far as material, are set out in the margin.[1]

The petitioner contends that it is not a personal holding company within the intendment of the statute.

---

[1] SEC. 351. SURTAX ON PERSONAL HOLDING COMPANIES.

(a) IMPOSITION OF TAX.—There shall be levied, collected, and paid, for each taxable year, upon the undistributed adjusted net income of every personal holding company a surtax equal to the sum of the following:

\* \* \* \* \* \* \*

(b) DEFINITIONS.—As used in this title—

(1) The term "personal holding company" means any corporation [exceptions not material] if—(A) at least 80 per centum of its gross income for the taxable year is derived from royalties, dividends, interest, annuities, and \* \* \* gains from the sale of stock or securities, and (B) at any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals. \* \* \*

\* \* \* \* \* \* \*

(4) The terms used in this section shall have the same meaning as when used in Title I.

(c) ADMINISTRATIVE PROVISIONS.—All provisions of law (including penalties) applicable in respect of the taxes imposed by Title I of this Act, shall insofar as not inconsistent with this section, be applicable in respect of the tax imposed by this section \* \* \*.

SEC. 117. CAPITAL GAINS AND LOSSES.

\* \* \* \* \* \* \*

(f) RETIREMENT OF BONDS, ETC.—For the purposes of this title, amounts received by the holder upon the retirement of bonds, debentures, notes or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.

[*Regulations 86.*] ART. 351–2. *Classification of a personal holding company.*—A personal holding company is defined as any corporation (other than a corporation specifically exempt), first, 80 per cent or more of whose gross income for the taxable year was derived \* \* \* from the following sources:

(1) *Royalties.*—\* \* \*

(2) *Dividends.*—\* \* \*

(3) *Interest.*—\* \* \*

(4) *Annuities.*—\* \* \*

(5) *Gains from the sale of stock or securities.*—The term "gains from the sale of stock or securities" applies to all gains \* \* \* from the sale or exchange of stock or securities includable in gross income under Title I. The term "stock or securities" includes shares or certificates of stock or interest in any corporation, \* \* \* bonds, debentures, certificates of indebtedness, notes, \* \* \* obligations issued by or on behalf of a Government, State, Territory, or a political subdivision thereof, etc. \* \* \*.

ART. 351–8. *Return and Payment of Tax.*—A separate return is required for the surtax imposed under section 351. Such return shall be made on Form 1120H. In the case of a personal holding company which is a domestic corporation, the return is required to be made within the time prescribed in Section 53 \* \* \*. If the Commissioner finds a deficiency in respect of the tax imposed by section 351, he is required to follow the same procedure which applies to deficiencies in income tax under Title I. The penalties applicable to the income taxes imposed under Title I, as well as the provisions of Title I relating to interest and additions to the tax, also apply to the surtax imposed by section 351. The administrative provisions applicable to the surtax imposed by section 351 are not confined to those contained in Title I but embrace all administrative provisions of law which have any application to income taxes.

The parties stipulate that more than 50 per centum of petitioner's outstanding stock during the latter half of the taxable year was owned directly or indirectly by not more than five individuals, so that the question of whether it was a personal holding company within the statutory definition depends on whether 80 percent of its gross income for the taxable year was derived from royalties, dividends, interest, annuities and (except in cases of regular dealers in stock or securities) gains from the sale of stock or securities. The petitioner admits income from interest on loans, mortgages, Liberty bonds, and capital gain, comprising 79.64 percent of its gross income would be included in determining the necessary 80 percent, but contends that the action of the Commissioner in including in this class of income $700 realized in the taxable year as the difference between the unrecovered cost ($2,100) of the note of the board of public instruction and the payment thereon of $2,800 made in the taxable year was erroneous. If the $700 is included then 80 percent of the petitioner's gross income was derived from sources enumerated in the statute and the petitioner comes within the statutory definition of a "personal holding company."

The question is whether the profit of $700 realized in 1934 from payment on the note of the board of public instruction is "gain from the sale of stock or securities" within the meaning of the quoted phrase appearing in section 351 (b) (1) of the Revenue Act of 1934. Section 351 of the Revenue Act of 1934 is a new provision written into the revenue act for the first time in the year 1934. Subsection (b) (4) of the pertinent section states that, "The terms used in this section shall have the same meaning as when used in Title I." It is this proviso that gives rise to much of the argument involved here because, having this proviso in mind, respondent construes the term "sale", as used in the phrase quoted above from section 351 (b) (1), to have a broad meaning and to cover and include "exchange" of stock or securities. To support this construction of the term "sale" as applied to the transaction involved here, respondent refers to section 117 (f) of Title I of the Revenue Act of 1934, quoted before in the margin. Respondent argues that section 117 (f) is made applicable by section 351 (b) (4). Respondent's interpretation has been set forth in Regulations 86, article 351-2 (5), quoted before in the margin but, in his brief, respondent states that his argument in this proceeding would be the same if no regulation had been issued and respondent thereby bases his argument chiefly on the phraseology and intendment of section 351 (b) (1).

The parties argue that determination of the main question necessarily requires deciding various subsidiary questions relating to whether the payment on the note in question falls within section

117 (f). It is not necessary to set forth the various arguments. The main question involves construction of section 351 (b) (1), the terms of which are clear and unambiguous. Here, as in all proceedings, the question involved is to be decided with reference to the facts in the proceeding. A clear picture of the facts may avoid the confusion of much of the argument presented. Therefore, it is important to keep in mind the following. The petitioner held a note of the board of public instruction originally for $17,080.25, on which $8,680.25 remained due and unpaid at the time petitioner acquired the note. Respondent does not question the cost basis to petitioner of this note as amounting to $4,900. The payment petitioner received in 1934 was one of several annual installment payments on the note in accordance with the terms of the note. However, the installment payment on the note in 1934 resulted in admitted gain to petitioner of $700, by which amount the total payments then exceeded the petitioner's cost basis of the note. Future payments on the note, due after 1934, will also be "gain" to this petitioner, if paid to it. These are the salient facts.

Assuming, without deciding, that the partial liquidation of a note comes within section 117 (f) as the "retirement of  *  *  *  notes *  *  *  or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof)  *  *  *", we fail to see that the issue here turns in any way upon the wording of section 117 (f). Section 117 of the Revenue Act of 1934 deals with capital gains and losses. It was enacted to clarify the confusion existing as to whether the retirement of bonds and other obligations was a "sale or exchange" within the meaning of· the capital gain section. The phrase "sale or exchange" appears throughout section 117. There is nothing in reports of the Congressional Committee to indicate that section 117 was enacted with any thought of application to the definition of personal holding companies set forth in section 351 (b) (1).

Turning then to section 351 (b) (1) we find that it speaks of "gains from the *sale* of stock or securities." (Italics ours.) The liquidation or partial liquidation of an obligation evidenced by a note is not, to the holder thereof, a "sale" of the security. It is merely payment of an obligation according to its terms. We have so held with respect to the retirement of bonds. Cf. *John H. Watson, Jr.,* 27 B. T. A. 463; *Arthur E. Braun, Trustee,* 29 B. T. A. 1161; *Ernest W. Brown,* 36 B. T. A. 178, 184. By statute, the retirement of bonds is now treated as an "exchange" for determining capital gains and losses (sec. 117 (f), Revenue Act of 1934), but Congress had not, in the Revenue Act of 1934, characterized retirement of bonds or other evidences of indebtedness as a "sale" thereof. In our opinion, the

proviso set forth in section 351 (b) (4) does not have the effect of making section 117 (f) applicable in a question arising under section 351 and likewise, does not provide a foundation for interpreting the term "sale" as a broad term including a transaction that may be concluded to be an "exchange." It is our view that the term "sale" in section 351 (b) (1) means a sale in the ordinary sense of the word. In the taxing statutes the terms "sale" and "exchange" appear separately in some instances, and in other instances the terms appear in conjunction with each other. But the two terms are not synonymous and have not been confused in the revenue laws. It appears that wherever Congress has intended to apply the terms "sale" and "exchange" of property it has written the individual terms into the statute, either alone or in conjunction with each other. If either or both terms did not cover a wide enough field Congress has then used such additional phrase as "other disposition" of property. We conclude, therefore, that Congress could not have intended that the term "sale" in section 351 (b) (1) should include "exchange" within its meaning. It may be, that, for the purposes of section 351 limitation of subsection (b) (1) to "gains from the *sale* of stock or securities" left a loophole through which some taxpayers might escape classification as personal holding companies and the surtax imposed on such companies. It appears that Congress recognized this very situation because, in the Revenue Act of 1937, section 351 (b) of the then existing law was amended and section 353 (b) of the Revenue Act of 1937 was written to include the term "exchange." [2] The 1937 amendment, however, was not retroactive. Reference to the report of the Ways and Means Committee on the revenue laws of 1937 shows that the following explanation for the amendment is given:

Subsection (b) (of section 353, Act of 1937) includes as personal holding company income gains from the exchange of stock or securities. This is merely a clarifying amendment to carry out the intent of the existing law.

However, neither the amendment in 1937 nor the explanation thereof is decisive of the question as it arises under the Act of 1934 because there is no ambiguity in the pertinent provision of the Act of 1934. Cf. *Penn Mutual Life Insurance Co.* v. *Lederer*, 252 U. S. 523; *Casey* v. *Sterling Cider Co.*, 294 Fed. 426.

We therefore conclude that in the transaction before us the gain petitioner realized from the partial liquidation of the note was not such gain as is covered by section 351 (b) (1) and that, accordingly,

---

[2] SEC. 353. PERSONAL HOLDING COMPANY INCOME.

    *        *        *        *        *        *        *

    (b) STOCK AND SECURITIES TRANSACTIONS.—Except in the case of regular dealers in stock or securities, gains from the sale or exchange of stock or securities.

150

that gain does not bring petitioner within the statutory definition of a personal holding company for purposes of the surtax.

From the above conclusion, it follows that article 351-2 (5) of Regulations 86 goes beyond the statutory definition set forth in section 351 (b) (1) of the Revenue Act of 1934 in so far as it makes gains from *exchanges* of stock or securities a factor in classifying companies as personal holding companies. To this extent that part of the regulation in question becomes legislative in character, rather than an administrative construction of legislation, and must, therefore, be invalid. See *Campbell* v. *Galeno Chemical Co.*, 281 U. S. 599; *Burnet* v. *Marston*, 57 Fed. (2d) 611; *Penn Mutual Life Insurance Co.* v. *Lederer*, *supra; Morrill* v. *Jones*, 106 U. S. 466; *United States* v. *George*, 228 U. S. 14; *Ardsley Club* v. *Durey*, 40 Fed. (2d) 293.

Reviewed by the Board.

*Decision will be entered for the petitioner.*

OPPER dissents.