106 F.2d 731 (1939)
FOLEY SECURITIES CORPORATION
v.
COMMISSIONER OF INTERNAL REVENUE.
No. 11458.
Circuit Court of Appeals, Eighth Circuit.
October 11, 1939.
*732 E. F. Hoeschen, of St. Paul, Minn. (C. C. Goodson, of St. Paul, Minn., on the brief), for petitioner.
Ellis N. Slack, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen. and Sewall Key and Harry Marselli, Sp. Assts. to Atty. Gen. on the brief), for respondent.
Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.
SANBORN, Circuit Judge.
The taxpayer, a Minnesota corporation organized in 1928 and a "personal holding company" within the meaning of Section 351 of the Revenue Act of 1934, c. 277, 48 Stat. 680, 751, 26 U.S.C.A. § 331 (which provides for a surtax upon the "undistributed adjusted net income" of such a corporation), has petitioned for a review of a decision of the Board of Tax Appeals (38 B.T.A. 1036) which sustained a deficiency of $4,100.59 in the surtaxes of the petitioner for the year 1934.
The facts are stipulated. The taxpayer at the beginning of 1934 had an operating deficit of $23,650.53. Its adjusted net income for the year 1934 was $49,909.52. It distributed to its stockholders $42,375.
Section 351(a) (1) provides for a surtax of 30 per cent upon the "undistributed adjusted net income" up to $100,000 of a personal holding company. Section 351 (b) (2) (A) provides that the term "undistributed adjusted net income" means the "adjusted net income" less a 20 per cent deduction (which the taxpayer was allowed) and (§ 351(b) (2) (C) less "dividends paid during the taxable year." Section 351(b) (4) reads: "The terms used in this section shall have the same meaning as when used in Title I [Subchapters A-C of this chapter]."
Title I, Section 115(a), 48 Stat. 711, 26 U.S.C.A. § 115(a), contains the following definition of "dividend": "The term `dividend' when used in this title [chapter] * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913."
Section 115(d) provides: "If any distribution (not in partial or complete liquidation) made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not out of earnings or profits, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property."
The definition of "dividend" contained in Section 115(a) has been uniformly construed by the Board of Tax Appeals, and apparently almost without exception by the Commissioner, to mean a distribution made to shareholders out of earned surplus accumulated since February 28, 1913. Crystal Ice Co. v. Com'r, 14 B.T.A. 682, 688; Washburn v. Commissioner, 16 B.T.A. 1091, 1098; Shorb v. Commissioner, 22 B. T.A. 644, 645; Stifel v. Commissioner, 29 *733 B.T.A. 1145, 1148-1150; Sale v. Commissioner, 35 B.T.A. 938, 939; Kinnear v. Commissioner, 36 B.T.A. 153, 155.[1]
The taxpayer had, at the time it made the distribution of $42,375 to its shareholders, an earned surplus of $26,258.97 available for the payment of a "dividend". Therefore, when it distributed $42,375 to its shareholders, only $26,258.97 was a "dividend" under the ruling of the Board, and the balance was a distribution of capital not taxable to the shareholders, but which went to reduce the adjusted basis of their stock. The result was that, in computing the surtax liability of the taxpayer for the year 1934, the Commissioner deducted from its "adjusted net income" of $49,909.52 the 20 per cent deduction of $9,981.90 and $26,258.97 as a "dividend", or a total of $36,240.87, which left an "undistributed adjusted net income" of $13,668.65, upon which a surtax of 30 per cent was assessed, equalling $4,100.59. Had it not been for the existence of the operating deficit of $23,650.53, the taxpayer would have been liable for no surtax, since it had distributed to its shareholders more than 80 per cent of its "adjusted net income" for the year 1934.
The taxpayer contends that, in computing the surtax, the Commissioner should have deducted, as a dividend, from its "adjusted net income" the entire $42,375 which it had distributed to its shareholders. In support of this contention it cites Blair v. United States, 63 Ct.Cl. 193, certiorari denied 275 U.S. 546, 48 S.Ct. 84, 72 L.Ed. 418, which, in effect, held that a distribution to shareholders out of current earnings was a "dividend", although the capital of the corporation was impaired at the time the distribution was made. The Board of Tax Appeals has expressly refused to follow the Blair case (Washburn v. Commissioner, 16 B.T.A. 1091, 1098; Shorb v. Commissioner, 22 B.T.A. 644, 645), relying in part upon Willcuts v. Milton Dairy Co., 275 U.S. 215, at page 218, 48 S.Ct. 71, at page 72, 72 L.Ed. 247, in which the Supreme Court said: "But it is a prerequisite to the existence of `undivided profits' as well as a `surplus,' that the net assets of the corporation exceed the capital stock. Hence, where the capital is impaired, profits, though earned and remaining in the business, if insufficient to offset this impairment do not constitute `undivided profits.'" The Supreme Court also held in that case that the words "undivided profits", as commonly understood, describe such part of the excess in value of the corporate assets as consisted of profits which had neither been distributed as dividends nor carried to surplus account.
The taxpayer also cites Helvering v. Canfield, 291 U.S. 163, 54 S.Ct. 368, 78 L. Ed. 706. In that case the question was how much of a distribution made to shareholders in 1923 was tax exempt because derived from a surplus accumulated prior to March 1, 1913. It was held that losses of 1915 and 1916 should be charged against March 1, 1913, surplus, and did not have the effect of reducing profits earned in the years subsequent to 1916. We can find no suggestion in that opinion that a distribution made to shareholders by a corporation out of current earnings constitutes a "dividend" where, due to an impairment of capital, the corporation has no earned surplus.
It seems obvious to us that the ruling of the Board and of the Commissioner as to what constitutes a "dividend" under the definition of that term contained in Section 115(a) must be accepted as correct. It follows that the distribution which was made by the taxpayer to its shareholders in 1934 was a "dividend" only to the extent that it exceeded the operating deficit due to losses in prior years. It was deductible from the taxpayer's "adjusted net income" to the extent that it was such a "dividend", because Section 351(b) (2) (C) allowed a deduction for "dividends", and Section 351 (b) (4) expressly provided that the terms used in Section 351 should have the same meaning as in Title I, 26 U.S.C.A. § 1 et seq. Applying strictly the provisions of Section 351 to the taxpayer's situation, the taxpayer was entitled to have a credit, against its "adjusted net income", of only so much of the distribution to its shareholders in 1934 as equalled its earned surplus, which was $26,258.97.
It is apparent, therefore, that the rulings of the Commissioner and the Board to the effect that the taxpayer had an "undistributed adjusted net income" of $13,668.65 which was subject to the 30 per cent surtax, were in exact compliance with the letter of Section 351, and that the decision *734 of the Board should be affirmed unless some other conclusion can reasonably be drawn from the language of Section 351 or unless that section violates some provision of the Constitution.
There can be no doubt that the purpose of Congress in enacting Section 351 was to compel each personal holding company to distribute its current earnings instead of accumulating them, so as to augment the income of its shareholders, thereby increasing the amount of their tax liability. There is nothing, aside from the letter of the statute, to indicate that Congress intended to impose a 30 per cent surtax upon the current earnings of such a corporation not available for "dividends" but actually distributed to its shareholders. We have no reason to suppose that the failure of Congress to provide that the word "dividends" as used in Section 351 (b) (2) (C) should include distributions to shareholders made from current earnings as well as those made from accumulated earnings, was anything more than an inadvertent omission which was subsequently corrected. See Section 109, Revenue Act of 1935, 49 Stat. 1014, 1020, and Section 115(a), Revenue Act of 1936, 49 Stat. 1648, 1687, 26 U.S.C. A. § 115 (a). This taxpayer, in distributing more than 80 per cent of its current earnings to its shareholders, fulfilled the intention of Congress when it enacted Section 351.
What we are in reality being asked to do, however, is to construe Section 351 as including language which Congress neglected to insert in it; to amend the section so as to provide that the term "dividends" shall be construed to mean not only distributions to shareholders out of accumulated earnings or profits, but also distributions made to them out of current earnings or profits. We have no power to make such an amendment, regardless of what we think the intent of Congress was.
It is true that courts have, not infrequently, departed from a too literal interpretation of a statute where the intention of the law makers was clear and a strict construction would defeat that intention or lead to absurd consequences. Oates v. First National Bank, 100 U.S. 239, 244, 25 L.Ed. 580; United States v. Kirby, 7 Wall. 482, 74 U.S. 482, 487, 19 L.Ed. 278; Heydenfeldt v. Daney Gold & S. M. Co., 93 U.S. 634, 638, 23 L.Ed. 995; Holy Trinity Church v. United States, 143 U.S. 457, 472, 12 S.Ct. 511, 36 L.Ed. 226; Lau Ow Bew v. United States, 144 U.S. 47, 59, 12 S.Ct. 517, 36 L.Ed. 340; Hawaii v. Mankichi, 190 U.S. 197, 212-213, 23 S.Ct. 787, 47 L.Ed. 1016. See also: United States v. Sweet, 245 U.S. 563, 38 S.Ct. 193, 62 L.Ed. 473; Barrett v. Van Pelt, 268 U.S. 85, 90, 45 S.Ct. 437, 69 L.Ed. 857; First National Bank v. Chapman, 173 U. S. 205, 213, 214, 19 S.Ct. 407, 43 L.Ed. 669; Donnelly Garment Co. v. International L. G. W. Union, 8 Cir., 99 F.2d 309; United States v. Katz, 271 U.S. 354, 357, 46 S. Ct. 513, 70 L.Ed. 986.
The rule permitting courts in some instances to avoid construing a statute literally was sought to be invoked by the Government in the case of Crooks v. Harrelson, 282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156. There, Congress had obviously made a mistake in the language of a taxing statute, the result of which had the effect of eliminating the value of Missouri real estate from the gross estate of a decedent in computing the Federal estate tax. Mr. Justice Sutherland, who delivered the opinion of the court, said (282 U.S. page 60, 51 S.Ct. at page 50, 75 L.Ed. 156):
"Courts have sometimes exercised a high degree of ingenuity in the effort to find justification for wrenching from the words of a statute a meaning which literally they did not bear in order to escape consequences thought to be absurd or to entail great hardship. But an application of the principle so nearly approaches the boundary between the exercise of the judicial power and that of the legislative power as to call rather for great caution and circumspection in order to avoid usurpation of the latter. Monson v. Chester, 22 Pick. (Mass.) 385, 387. It is not enough merely that hard and objectionable or absurd consequences, which probably were not within the contemplation of the framers, are produced by an act of legislation. Laws enacted with good intention, when put to the test, frequently, and to the surprise of the lawmaker himself, turn out to be mischievous, absurd, or otherwise objectionable. But in such case the remedy lies with the lawmaking authority, and not with the courts. See In re Alma Spinning Company, L.R. 16 Ch.Div. 681, 686; King v. Commissioners, 5 A. & E. 804, 816; Abley v. Dale, L.J. (1851) N.S. Pt. 2, Vol. 20, 233, 235. And see generally Chung Fook v. White, 264 U.S. 443, 445, 44 S.Ct. 361, 68 L.Ed. 781; Com'r of *735 Immigration v. Gottlieb, 265 U.S. 310, 313, 44 S.Ct. 528, 68 L.Ed. 1031.
"In support of the claim that a literal construction is not admissible, it is said that by other provisions of section 402 [of the Revenue Act of 1918, c. 18, 40 Stat. 1057, 1097-8] certain interests in real property, such as dower, etc., are made subject to the tax without regard to the conditions set forth in subdivision (a), and that this results in an incongruity amounting to an absurdity. But unless the Constitution be violated, Congress may select the subjects of taxation and qualify them differently as it sees fit; and if it does so in plain terms, as it has done here, it is not within the province of the court to modify the law by construction. * * *
"Finally, the fact must not be overlooked that we are here concerned with a taxing act, with regard to which the general rule requiring adherence to the letter applies with peculiar strictness."
We conclude that Section 351 must be taken to mean exactly what it says.
But the taxpayer contends that if the law is interpreted strictly and as the Commissioner and the Board have interpreted it, it becomes unconstitutional because it violates the Sixteenth Amendment and the Fifth Amendment: the Sixteenth because the law ceases to provide for an income tax and provides for a capital levy; and the Fifth because it takes the taxpayer's property without due process of law by establishing a purely arbitrary basis for the taxation of personal holding companies having an impaired capital.
Section 351 does not violate the Sixteenth Amendment, U.S.C.A.Const. The surtax is based only on income. It is no less an income tax because it requires the taxpayer to treat as "undistributed adjusted net income" so much of its current earnings distributed to its shareholders as equalled the amount of the impairment of its capital.
The answer of the Commissioner to the taxpayer's contention that Section 351, in so far as it treats distributed current net earnings of personal holding companies having an impaired capital, to the extent of the impairment, as undistributed net income for the purpose of the surtax, is so arbitrary as to constitute a violation of the Fifth Amendment, U.S.C.A.Const. is in substance as follows: That deductions which Congress allows to be taken from net income are as a rule statutory privileges and a matter of grace (New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348; Van Vleck v. Commissioner, 2 Cir., 80 F.2d 217, 218; Lucky Tiger-Combination Gold Mining Co. v. Commissioner, 8 Cir., 76 F.2d 234, 236) which may be conditioned or denied entirely (Brushaber v. Union Pac. R. Co., 240 U.S. 1, 23, 24, 36 S.Ct. 236, 60 L.Ed. 493, L.R.A.1917D, 414, Ann.Cas.1917B, 713; Helvering v. Independent Life Ins. Co., 292 U.S. 371, 381, 54 S.Ct. 758, 78 L. Ed. 1311), and that Congress has power to levy a tax on corporate net income, even though there be an impairment of capital (Crane-Johnson Co. v. Commissioner, 8 Cir., 105 F.2d 740, 743; Willcuts v. Milton Dairy Co., 275 U.S. 215, 48 S.Ct. 71, 72 L.Ed. 247). This is not, we think, a complete answer.
The vice of this statute as we see it is that Congress, in order to induce personal holding companies to distribute their current net earnings, and after placing all such companies in a class for the purpose of imposing a heavy surtax upon such of their current earnings as are not distributed as dividends to shareholders, used a restricted definition of the term "dividends" in providing how the undistributed earnings should be computed, which had the effect of placing personal holding companies with a capital impairment in a far worse position than those without an impairment of capital, and this for no apparent reason. The result was that the former were penalized and required to pay a surtax upon all or a part of the income received and actually distributed by them, the amount of the surtax depending, of course, upon the extent of the impairment of their capital, so that those with the largest operating deficits were required to pay the largest surtaxes.
"Except in rare and special instances, the due process of law clause contained in the Fifth Amendment is not a limitation upon the taxing power conferred upon Congress by the Constitution." Magnano Co. v. Hamilton, 292 U.S. 40, 44, 54 S.Ct. 599, 601, 78 L.Ed. 1109. However, a tax may be so arbitrary and capricious as to amount to confiscation and offend the Fifth Amendment. Brushaber v. Union Pacific R. Co., 240 U.S. 1, 24, 36 S.Ct. 236, 60 L.Ed. 493, L.R.A.1917D, 414, Ann.Cas.1917B, 713; Barclay & Co. v. Edwards, 267 U.S. 442, 450, 45 S.Ct. *736 135, 69 L.Ed. 703; Nichols v. Coolidge, 274 U.S. 531, 542, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081; Coolidge v. Long, 282 U.S. 582, 596, 51 S.Ct. 306, 75 L.Ed. 562; Tyler v. United States, 281 U.S. 497, 504, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758; Heiner v. Donnan, 285 U.S. 312, 326, 52 S.Ct. 358, 76 L.Ed. 772; Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 92, 56 S.Ct. 70, 80 L.Ed. 62. The restraint imposed upon legislation by the due process clauses of the Fifth and Fourteenth Amendments, U.S.C.A. Const., is the same. Heiner v. Donnan, supra, 285 U.S. page 326, 52 S.Ct. 358, 76 L.Ed. 772. The existence of facts underlying constitutionality is always to be presumed and the burden is upon him who assails the selection of a class for taxation to show that there could be no reasonable basis for the legislative judgment in making it. Euclid v. Ambler Realty Co., 272 U.S. 365, 395, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016; Hardware Dealers' Mut. Fire Ins. Co. v. Glidden Co., 284 U.S. 151, 158, 52 S.Ct. 69, 76 L.Ed. 214; O'Gorman & Young, Inc. v. Hartford Fire Ins. Co., 282 U.S. 251, 257, 258, 51 S.Ct. 130, 75 L.Ed. 324, 72 A.L.R. 1163; Heiner v. Donnan, 285 U.S. 312, 342, 52 S.Ct. 358, 76 L.Ed. 772.
It has been held that an act, in creating a conclusive presumption that a gift made two years prior to death was made in contemplation of death and requiring the value of the gift to be included in gross estate in computing the estate tax, violated the due process clause of the Fifth Amendment (Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772), and that a statute seeking to tax the income of a wife as that of her husband violated due process (Hoeper v. Tax Commission, 284 U.S. 206, 52 S.Ct. 120, 76 L.Ed. 248, 78 A.L.R. 346). In Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081, it was held that an act which required the inclusion in gross estate of the value of property transferred by a decedent prior to the passage of the act, merely because the conveyance was intended to take effect in possession or enjoyment at or after his death, was arbitrary and capricious and amounted to confiscation.
Whether arbitrary discrimination in a taxing act can constitute confiscation and a violation of the Fifth Amendment is apparently still an open question. In Steward Machine Co. v. Davis, 301 U.S. 548, at page 584, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293, the Supreme Court considered whether the exemption of agricultural labor, domestic service in private homes, and certain other classes of labor from the Social Security Act, 42 U.S.C.A. § 301 et seq., was a discrimination which vitiated the tax imposed by that Act. After pointing out that the Fifth Amendment, unlike the Fourteenth, has no equal protection clause, that it subjects Congress to restraints less narrow and confining than those of the Fourteenth, and that similar exemptions contained in similar state statutes had been held valid, the Court said (301 U.S. page 585, 57 S.Ct. page 890, 81 L.Ed. 1279, 109 A.L.R. 1293): "The act of Congress is therefore valid, so far at least as its system of exemptions is concerned, and this though we assume that discrimination, if gross enough, is equivalent to confiscation and subject under the Fifth Amendment to challenge and annulment." (Italics supplied.) See, also, Currin v. Wallace, 306 U.S. 1, 14, 59 S.Ct. 379, 386, 83 L.Ed. 441.
Since the power of Congress to tax is not limited by the Fifth Amendment (Brushaber v. Union Pacific R. Co., 240 U. S. 1, 24, 36 S.Ct. 236, 60 L.Ed. 493, L.R.A. 1917D, 414, Ann.Cas.1917B, 713; Billings v. United States, 232 U.S. 261, 282, 34 S. Ct. 421, 58 L.Ed. 596) "except in rare and special instances" (Magnano Co. v. Hamilton, 292 U.S. 40, 44, 54 S.Ct. 599, 601, 78 L.Ed. 1109) which are ill defined, and since that Amendment contains no equal protection clause, and it is uncertain that discrimination, even though it be gross, constitutes confiscation, it is apparent that a ruling that Section 351, in dealing unjustly and unreasonably with personal holding companies having an impairment of capital, was violative of the Fifth Amendment, could not be justified. In his dissenting opinion in Heiner v. Donnan, 285 U.S. 312, at page 338, 52 S.Ct. 358, at page 365, 76 L.Ed. 772, Mr. Justice Stone says: "No tax has been held invalid under the Fifth Amendment because based on an improper classification, and it is significant that in the entire one hundred and forty years of its history the only taxes held condemned by the Fifth Amendment were those deemed to be arbitrarily retroactive. See Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081; Untermyer v. Anderson, *737 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645; Coolidge v. Long, 282 U.S. 582, 51 S.Ct. 306, 75 L.Ed. 562."
The decision of the Board of Tax Appeals is affirmed.
NOTES
[1] "The rule is that a corporation does not have earnings or profits available for distribution as dividends until impairments of capital or paid-in surplus resulting from operating losses have been restored."