HELVERING, COMMISSIONER OF INTERNAL
REVENUE, *v.* HAMMEL ET UX.

No. 49. Argued December 11, 1940.—Decided January 6, 1941.

*Mr. Norman D. Keller,* with whom *Solicitor General Biddle, Assistant Attorney General Clark,* and *Mr. Sewall Key* were on the brief, for petitioner.

*Mr. John J. Sloan* for respondent.

Mr. Justice Stone delivered the opinion of the Court.

We are asked to say whether a loss sustained by an individual taxpayer upon the foreclosure sale of his interest in real estate, acquired for profit, is a loss which, under § 23 (e) (2) of the 1934 Revenue Act, 48 Stat. 680, may be deducted in full from gross income for the purpose of arriving at taxable income, or is a capital loss deductible only to the limited extent provided in §§ 23 (e) (2), (j), and 117.

In the computation of taxable income § 23 (e) (2) of the 1934 Revenue Act permits the individual taxpayer to deduct losses sustained during the year incurred in any transaction for profit. Subsection (j) provides that "losses from sales or exchanges of capital assets" shall be allowed only to the extent of $2,000 plus gains from such sales or exchanges as provided by § 117 (d). By § 117 (b) it is declared that "capital assets" "means property held by the taxpayer . . . but does not include stock in trade of the taxpayer . . . or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business."

Respondent taxpayers, with other members of a syndicate, purchased "on land contract" a plot of land in Oakland County, Michigan, for the sum of $96,000, upon a down payment of $20,000. The precise nature of the contract does not appear beyond the fact that payments for the land were to be made in installments, and the vendor retained an interest in the land as security for payment of the balance of the purchase price. Before the purchase price was paid in full the syndicate defaulted on its payments. The vendor instituted foreclosure proceedings by suit in equity in a state court which resulted in a judicial sale of the property, the vendor becoming the purchaser, and in a deficiency judgment against the members of the syndicate. Respond-

ents' contribution to the purchase money, some $4,000, was lost.

The commissioner, in computing respondents' taxable income for 1934, treated the taxpayers' interest in the land as a capital asset and allowed deduction of the loss from gross income only to the extent of $2,000 as provided by §§ 23 (j) and 117 (d), in the case of losses from sales of capital assets. The Board of Tax Appeals ruled that the loss was deductible in full. The circuit court of appeals affirmed, 108 F. 2d 753, holding that the loss established by the foreclosure sale was not a loss from a "sale" within the meaning of § 23 (j). We granted certiorari, 310 U. S. 619, to resolve a conflict of the decision below with that of the court of appeals for the second circuit in *Commissioner* v. *Electro-Chemical Engraving Co.*, 110 F. 2d 614.

It is not denied that it was the foreclosure sale of respondents' interest in the land purchased by the syndicate for profit, which finally liquidated the capital investment made by its members and fixed the precise amount of the loss which respondents seek to deduct as such from gross income. But they argue that the "losses from sales" which by § 23 (j) are made deductible only to the limited extent provided by § 117 (d) are those losses resulting from sales voluntarily made by the taxpayer, and that losses resulting from forced sales like the present not being subject to the limitations of § 117 (d) are deductible in full like other losses under § 23 (e) (2).

To read this qualification into the statute respondents rely on judicial decisions applying the familiar rule that a restrictive covenant against sale or assignment refers to the voluntary action of the covenantor and not to transfers by operation of law or judicial sales *in invitum.* See *Guaranty Trust Co.* v. *Green Cove & M. R. Co.*, 139 U. S. 137; *Gazlay* v. *Williams*, 210 U. S. 41; *Riggs*

v. *Pursell*, 66 N. Y. 193. But here we are not concerned with a restrictive covenant of the taxpayer, but with a sale as an effective means of establishing a deductible loss for the purpose of computing his income tax. The term sale may have many meanings, depending on the context, see Webster's New International Dictionary. The meaning here depends on the purpose with which it is used in the statute and the legislative history of that use. Hence the respondents argue that the purpose of providing in the 1934 Act for a special treatment of gains or losses from capital assets was to prevent tax avoidance by depriving the taxpayer of the option allowed to him by the earlier acts, to effect losses deductible in full by sales of property at any time within two years after it was acquired, which until held for that period was not defined as a capital asset, § 208 Revenue Act of 1924, 43 Stat. 253; § 208 Revenue Act of 1926, 44 Stat. 19, and § 101 of the Revenue Act of 1928, 45 Stat. 811.

It is said that since losses from foreclosure sales not within the control of the taxpayer are not within the evil aimed at by the 1934 Act, they must be deemed to be excluded from the reach of its language. To support this contention respondents rely on the report of the Ways and Means Committee submitting to the House the bill which, with amendments not now material, became the Revenue Act of 1934. The Committee in pointing out a "defect" of the existing law said: "Taxpayers take their losses within the two year period and get full benefit therefrom and delay taking gains until the two-year period has expired, thereby reducing their taxes." H. Rept. 704, 73d Cong., 2d Sess., pp. 9 and 10.

But the treatment of gains and losses from sales of capital assets on a different basis from ordinary gains and losses was not introduced into the revenue laws by the 1934 Act. That had been a feature of every revenue

law beginning with the Act of 1921, 42 Stat. 227, and each had defined as capital losses "losses from sales or exchanges of capital assets." The 1934 Act made no change in this respect but for the first time it provided that "capital assets" should include all property acquired by the taxpayer for profit regardless of the length of time held by him and that capital gains and losses from sales of capital assets should be recognized in the computation of taxable income according to the length of time the capital assets are held by the taxpayer, varying from 100% if the capital asset is held for not more than a year to 30% if it is held more than ten years. § 117 (a). Finally, for the first time, the statute provided that capital losses in excess of capital gains should be deducted from ordinary income only to the extent of $2,000. Thus by treating all property acquired by the taxpayer for profit as capital assets and limiting the deduction of capital losses in the manner indicated, the Act materially curtailed the advantages which the taxpayer had previously been able to gain by choosing the time of selling his property.

The definition of capital losses as losses from "sales" of capital assets, as we have pointed out, was not new. As will presently appear, the legislative history of this definition shows that it was not chosen to exclude from the capital assets provisions losses resulting from forced sales of taxpayers' property. And, if so construed, substantial loss of revenue would result under the 1934 Act, whose purpose was to avoid loss of revenue by the application of the capital assets provisions. In drafting the 1934 Act the Committee had before it proposals for stabilizing the revenue by the adoption of the British system under which neither capital gains nor losses enter into the computation of the tax. In declining to follow this system in its entirety the Committee said: "It is deemed wiser to attempt a step in this direction without

letting capital gains go entirely untaxed." It accordingly reduced the tax burden on capital gains progressively with the increase of the period up to ten years, during which the taxpayer holds the capital asset, and permitted the deduction, on the same scale, of capital losses, but only to the extent that there are taxable capital gains, plus $2,000. In thus relieving capital gains from the tax imposed on other types of income, it cannot be assumed, in the absence of some clear indication to the contrary, that Congress intended to permit deductions in full of losses resulting from forced sales of the taxpayers' property, from either capital gains or ordinary gross income, while taxing only a fraction of the gains resulting from the sales of such property. See *White* v. *United States,* 305 U. S. 281, 292; *Helvering* v. *Inter-Mountain Life Ins. Co.,* 294 U. S. 686, 689, 690.

The taxation of capital gains after deduction of capital losses on a more favorable basis than other income, was provided for by § 206 of the 1921 Revenue Act, as the means of encouraging profit-taking sales of capital investments, H. Rept. No. 350, 67th Cong., 2d Sess., p. 8. *Burnet* v. *Harmel,* 287 U. S. 103, 106. In this section, as in later Acts, capital net gain was defined as "the excess of the total capital gain over the sum of capital deductions and capital losses"; capital losses being defined as the loss resulting from the sale or exchange of capital assets. In submitting the proposed Revenue Act of 1924, the House committee pointed out that the 1921 Act contained no provision for limiting deduction of capital losses where they exceeded the amount of capital gains. H. Rept. No. 179, 68th Cong., 1st Sess., p. 14. This was remedied by providing in § 208 (c) that the amount by which the tax is reduced on account of a capital loss shall not exceed 12½% of the capital loss. In commenting on this provision the Committee said, p. 20: "If the amount by which the tax is to be increased on account of capital gains is limited to 12½% of the capital gain

it follows logically that the amount by which the tax. is reduced on account of capital losses shall be limited to the 12½% of the loss." This provision was continued without changes now material until the 1934 Act. § 208 (c) in the 1924 and 1926 Acts; § 101 (b) in the 1928 and 1932 Acts, 47 Stat. 191.

Congress thus has given clear indication of a purpose to offset capital gains by losses from the sale of like property and upon the same percentage basis as that on which the gains are taxed. See *United States* v. *Pleasants,* 305 U. S. 357, 360. This purpose to treat gains and deductible losses on a parity but with a further specific provision provided by § 117 (d) of the 1934 Act, permitting specified percentages of capital losses to be deducted from ordinary income to the extent of $2,000, would be defeated in a most substantial way if only a percentage of the gains were taxed but losses on sales of like property could be deducted in full from gross income. This treatment of losses from sales of capital assets in the 1924 and later Acts and the reason given for adopting it afford convincing evidence that the "sales" referred to in the statute include forced sales such as have sufficed, under long accepted income tax practice, to establish a deductible loss in the case of non-capital assets. Such sales can equally be taken to establish the loss in the case of capital assets without infringing the declared policy of the statute to treat capital gains and losses on a parity.

We can find no basis in the language of the Act, its purpose or its legislative history, for saying that losses from sales of capital assets under the 1934 Act, more than its predecessors, were to be treated any differently whether they resulted from forced sales or voluntary sales. True, courts in the interpretation of a statute have some scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results, *United*

*States* v. *Katz*, 271 U. S. 354, 362, or would thwart the obvious purpose of the statute, *Haggar Co.* v. *Helvering*, 308 U. S. 389. But courts are not free to reject that meaning where no such consequences follow and where, as here, it appears to be consonant with the purposes of the Act as declared by Congress and plainly disclosed by its structure.

It is not without significance that Congress, in the 1934 Act, enlarged the scope of its provisions relating to losses from sales of capital assets by including within them losses upon the disposition of the taxpayer's property by methods other than sale and without reference to the voluntary action of the taxpayer. It thus treats as losses from sales or exchanges the loss sustained from redemption of stock, § 115 (c), retirement of bonds, § 117 (f), losses from short sales, § 117 (e) (1), and loss sustained by failure of the holder of an option to exercise it, § 117 (e) (2), although none of these transactions involves a loss from a sale. See *McClain* v. *Commissioner, post,* p. 527.

The scope of the capital loss provisions was still further enlarged by § 23 (k) (2) of the Revenue Act of 1938, 52 Stat. 447, which provides that if securities, which are capital assets, are ascertained to be worthless and are charged off within the taxable year the loss, with an exception not now material, shall be considered as a loss arising from a sale or exchange. These provisions disclose a consistent legislative policy to enlarge the class of deductible losses made subject to the capital assets provisions without regard to the voluntary action of the taxpayer in producing them. We could hardly suppose that Congress would not have made provision for the like treatment of losses resulting from a forced sale of the taxpayer's property acquired for profit either in the 1934 or 1938 Act, if it had thought that the term "sales or exchanges" as used in both acts did not include such sales of the taxpayer's property.

Respondents also advance the argument, sustained in *Commissioner* v. *Freihofer*, 102 F. 2d 787, that the definitive event fixing respondents' loss was not the foreclosure sale but the decree of foreclosure which ordered the sale and preceded it. But since the foreclosure contemplated by the decree was foreclosure by sale and the foreclosed property had value which was conclusively established by the sale for the purposes of the foreclosure proceeding, the sale was the definitive event establishing the loss within the meaning and for the purpose of the revenue laws. They are designed for application to the practical affairs of men. The sale, which finally cuts off the interest of the mortgagor and is the means for determining the amount of the deficiency judgment against him, is a means adopted by the statute for determining the amount of his capital gain or loss from the sale of the mortgaged property.

The court below also thought that the loss suffered by respondents could not be treated as a loss from a sale since by the law of Michigan the vendor upon a land-contract containing the usual forfeiture clause had the right to deprive respondents and their joint adventurers of all interest in the property by a declaration of forfeiture, and that the only additional advantage of foreclosure was to obtain a deficiency judgment. But there is nothing in this record to show that the land contract in this case contained a forfeiture clause. Even if it did, it does not appear that there was in fact a forfeiture apart from the sale on foreclosure. Cf. *Davidson* v. *Commissioner*, 305 U. S. 44, 46; *Helvering* v. *Midland Insurance Co.*, 300 U. S. 216, 224; *United States* v. *Phellis*, 257 U. S. 156, 172.

*Reversed.*

Mr. Justice Roberts is of opinion that the judgment should be affirmed for the reasons stated in the opinion of the Circuit Court of Appeals, 108 F. 2d 753.