## UNITED STATES v. ARMATURE RE-WINDING CO.

### No. 11973.

Circuit Court of Appeals, Eighth Circuit.

Jan. 13, 1942.

George H. Zeutzius, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch, Sp. Asst. to the Atty. Gen., Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and Russell Vandivort, Asst. U. S. Atty., of St. Louis, Mo., on the brief), for appellant.

Rodney M. Fairfield, of St. Louis, Mo. (Wm. S. Bedal and Blayney, Bedal, Cook & Fairfield, all of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

SANBORN, Circuit Judge.

The sole question for decision is whether the appellee, which as plaintiff sued to recover $1,139.64 paid as a manufacturer's excise tax under the Revenue Act of 1932, c. 209, § 606(c), 47 Stat. 261,[1] upon sales of reconditioned or rebuilt automobile generators and armatures, was a manufacturer or producer of the articles sold within the meaning of the statute.[2]

The trial court found that the appellee was not a "manufacturer" or "producer", and the Government has appealed.

The evidentiary facts are not in substantial dispute. The appellee purchased and rebuilt automobile generators and armatures which had become useless. It did whatever might be necessary to restore them to usefulness, and it then sold the rebuilt article without misrepresentation. The average cost of the material required to restore a defective generator unit was about 76½¢, and the average cost of labor was 40¢. The rewinding of a defective armature cost, on an average, 27½¢ for material and about 30¢ for labor. When rebuilt, the article was the same article which the appellee had purchased with the addition of the material and labor furnished by the appellee in order to make it useful and operable. At least 95% of the sales of rebuilt generators and armatures made by the appellee, and upon which the Government imposed a tax, were sold on an "exchange basis." The buyer (usually a garage man) would buy a rebuilt generator or armature from the appellee and would exchange in part payment a used and defective generator or armature of the identical type and model. The rebuilt generators and armatures sold by the appellee were sold at prices which approximated one-half of the prices of the same articles when new, and on exchanges of defective generators or armatures for rebuilt generators or armatures the appellee allowed the buyer of a rebuilt article something more than one-half of its price.

It is clear from the evidence and the findings of the trial court that the amount of labor and material which went into the defective generators and armatures in order to restore them to usefulness was small; that the appellee did not make generators or armatures from new materials or assemble them from new parts; and that the articles sold by the appellee were the same articles that it had purchased, with such repairs and renewals of parts as to make them operable.

The articles sold by the appellee were concededly automobile parts or accessories and were sold as such, but the court below found as a fact that "the sales of reconditioned generators and rewound armatures in respect of which the excise taxes involved in this case were imposed did not constitute the sales of automobile parts or accessories by the manufacturer,

---

[1] 26 U.S.C.A., Internal Revenue Acts, page 610, Act of 1932, § 606(c), 26 U.S. C.A. Int.Rev.Code, § 3403(c).

[2] "§ 606. Tax on Automobiles, etc.

"There is hereby imposed upon the following articles sold by the manufacturer, producer, or importer, a tax equivalent to the following precentages of the price for which so sold:

\* \* \* \* \*

"(c) Parts or accessories (other than tires and inner tubes) for any of the articles enumerated in subsection (a) or (b), 2 per centum. \* \* \*."

producer or importer." The appellee contends that this finding is binding on this Court unless clearly erroneous, Rule 52(a), Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, which, of course, is true. But if this ultimate finding is contrary to the evidentiary findings or is based upon a misapplication of the law to the evidentiary findings, it is not binding upon this Court. Helvering v. Johnson, 8 Cir., 104 F.2d 140, 144, and cases cited.

Concededly, this case differs in no material respect from United States v. Armature Exchange, Inc., 116 F.2d 969, certiorari denied, 313 U.S. 573, 61 S.Ct. 960, 85 L.Ed. 1531, in which the Circuit Court of Appeals for the Ninth Circuit reversed the determination of the trial court that the taxpayer in that case was not a manufacturer or producer of armatures, but was engaged in the reconstruction and restoration of them. See, also, United States v. J. Leslie Morris Company, Inc., 9 Cir., 124 F.2d 371, decided December 15, 1941, and United States v. Moroloy Bearing Service of Oakland, Ltd., 9 Cir., 124 F.2d 373, decided December 15, 1941. In line with those decisions is Clawson & Bals, Inc. v. Harrison, 7 Cir., 108 F.2d 991, certiorari denied, 309 U.S. 685, 60 S.Ct. 808, 84 L.Ed. 1028, in which it was held that sales of connecting rods for automobiles, which rods were made from used and discarded rods, were subject to the excise tax imposed upon sales by a manufacturer or producer.

■ It is, of course, important that, so far as possible and particularly with respect to questions affecting the administration of taxing statutes, there should be uniformity of decision among the Circuits, and we would not be justified in refusing to follow the decision of the Ninth Circuit in United States v. Armature Exchange, Inc., supra, unless satisfied that it was erroneous.[3] We are not satisfied that the decision of the Ninth Circuit is erroneous, and there is justification for believing that the Supreme Court of the United States did not regard it as erroneous.

■ If the language of a taxing act was always to be given its ordinary and usual meaning, there would be much force in the appellee's contention that the word "manufacturer" did not, as commonly understood, include such a processor as the appellee, since the articles sold were not made of new material and the processing of them resulted in no transformation.[4] It has, however, become increasingly apparent that the purpose of a taxing act, the probable intent of Congress, the general statutory scheme of taxation set up, and the construction adopted by the Commissioner of Internal Revenue and not rejected by Congress must all be given appropriate effect in determining what meaning is to be accorded a word or a phrase in such an act.[5]

■ The appellee's rebuilt generators and armatures were automobile accessories and articles of commerce sold in competition with similar articles which were manufactured of new materials and were subject to the excise tax. Under the applicable regulations (Treasury Regulations 46, Art. 4), "the term 'producer' includes a person who produces a taxable article by processing, manipulating, or changing the form of an article, or produces a taxable article by combining or assembling two or more articles." This definition is broad enough to include the appellee. There appears to be no very persuasive reason why rebuilt automobile parts, which compete with newly manufactured parts for public

---

[3] Hennepin County, Minn., v. M. W. Savage Factories, Inc., 8 Cir., 83 F.2d 453, 456; Sherman & Son v. Corin, 1 Cir., 73 F.2d 468, 470; United States v. Blosser, 8 Cir., 104 F.2d 119, 121; Grain Belt Supply Co. v. Commissioner, 8 Cir., 109 F.2d 490, 492.

[4] Kidd v. Pearson, 128 U.S. 1, 20, 9 S. Ct. 6, 32 L.Ed. 346; Anheuser-Busch Brewing Ass'n v. United States, 207 U.S. 556, 26 S.Ct. 204, 52 L.Ed. 336; Hartranft v. Wiegmann, 121 U.S. 609, 7 S.Ct. 1240, 30 L.Ed. 1012; Thurman v. Swisshelm, 7 Cir., 36 F.2d 350.

[5] See Helvering v. Hutchings, 312 U.S. 393, 397, 398, 61 S.Ct. 653, 85 L.Ed. 909; United States v. Pelzer, 312 U.S. 399, 403, 404, 61 S.Ct. 659, 85 L.Ed. 913, and compare Rheinstrom v. Commissioner, 8 Cir., 105 F.2d 642, 647, 124 A.L.R. 861; compare, Helvering v. Nebraska Bridge Supply & Lumber Co., 8 Cir., 115 F.2d 288, reversed per curiam, 312 U.S. 666, 61 S.Ct. 827, 85 L.Ed. 1111 with Helvering v. Hammel, 311 U.S. 504, 61 S.Ct. 368, 85 L.Ed. 303, 131 A.L.R. 1481, and Electro-Chemical Engraving Co. v. Commissioner, 311 U.S. 513, 61 S.Ct. 372, 85 L.Ed. 308. Compare, also, United States v. Stewart, 311 U.S. 60, 61 S.Ct. 102, 85 L.Ed. 40, with Stewart v. United States, 9 Cir., 106 F.2d 405, and with Stern Bros. & Co. v. Commissioner, 8 Cir., 108 F.2d 309.

favor, should not be subject to the same tax.[6]

The judgment appealed from is reversed, and the case is remanded with directions to enter judgment for the appellant.

[6] Congress in 1941 refused to amend the act to expressly exempt rebuilt automobile parts from payment of the manufacturers' excise tax. The Senate Committee on Finance in its report on this subject (S. Rep. No. 673, 77th Cong., 1st Sess. [Part. 1] page 48) said, in part: "There are several decisions of the United States circuit courts of appeals holding rebuilt parts and accessories to be subject to the manufacturers' tax. Rebuilt parts compete with new parts, and it appears appropriate that they should be subject to the same tax. Accordingly, no change has been made."