## BURGER–PHILLIPS CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9927.

Circuit Court of Appeals, Fifth Circuit.

March 31, 1942.

Benjamin Leader and John D. Hill, both of Birmingham, Ala., for petitioner.

Louise Foster, Sewall Key, and J. Louis Monarch, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Roy N. McMillan, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The question is whether a loss realized and made final in the tax year 1935 by electing, pursuant to a contract of purchase of land, to surrender all rights in the land in return for release from obligation to pay the purchase money, is an ordinary loss deductible in full or a capital loss limited to $2,000 under Section 117(d) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 707.

The agreed facts are these: On October 1, 1929, the taxpayer, Burger-Phillips Com-

pany, contracted with the United States to purchase the old postoffice building and site at Birmingham, Alabama, and to pay $760,000, one-fifth in cash and the remainder in four equal annual instalments with interest at five per cent. There was provision for a sale of the property in case of default, and "should the proceeds of sale be insufficient to pay the said monies due to the United States, the party of the second part shall be liable for such deficiency." The great depression coming on, the contract was several times modified in particulars not here important, and finally on Nov. 13, 1932, it was further modified so as to provide that for a period of three years from May 1, 1932, interest should be suspended and the rents received should be turned over to the Secretary of the Treasury to be applied against unpaid principal and interest, and "if the company should desire to be relieved at the expiration of the aforesaid three year period from any further obligation under the contract, it shall be so relieved provided the Company shall within thirty days prior to such expiration notify the Secretary of the Treasury in writing of its desire to be relieved * * * and in consideration of the said agreement for the relief of said Company * * * if the Company notified the Secretary of the Treasury of its desire to be relieved as aforesaid, all right, title, interest, and claim of the Company in and to the premises * * * shall, at the expiration of the aforesaid three year period, thereupon cease, and the said original agreement, as modified, shall become null and void * * * and all monies including principal, interest and said rentals paid by the party of the second part * * * shall be and become the absolute property of the United States as liquidated damages. * * *" It was also expressly agreed that, except as thus modified, the former agreements continued of full force. On April 11, 1935, the Company gave the stipulated written notice, which was acknowledged by the Secretary of the Treasury as in accordance with the contract. The Company had paid $190,000 upon the principal, which it thus lost. No deduction is claimed touching interest and rents.

The Commissioner contends that the taxpayer incurred this loss of principal by a sale or exchange of its investment in the purchased land, in consideration of the extinguishment of its personal liability for the balance of the price; and that the deduction for the loss is limited to $2,000 by section 117 (d). The taxpayer asserts that there was no sale or exchange, but a mere forfeiture or abandonment of its rights; that there was no personal liability which survived the notice, and that taxpayer received nothing in the final transaction.

As to the exact meaning of the words in Sect. 117(d), "losses from sales or exchanges of capital assets", there has been some difference of opinion in the decisions of the lower courts. In Helvering v. Nebraska Bridge Supply & Lumber Co., 115 F.2d 288, it was held there could be no sale or exchange of property where nothing of value was received; and that the transfer must be voluntary, so that an involuntary tax sale of property to the State, where there was no personal liability for the tax, was not a sale or exchange within the statute. A few days afterwards, the Supreme Court held that involuntary sales under foreclosure, there being personal obligation for the secured debt, were sales within the statute, Helvering v. Hammel, 311 U.S. 504, 61 S.Ct. 368, 85 L.Ed. 303, 131 A.L.R. 1481; Electro-Chemical Engraving Co. v. Commissioner, 311 U.S. 513, 61 S.Ct. 372, 85 L.Ed. 308; but no stress was laid on the benefit received by the taxpayer by the reduction or extinguishment of his personal liability. On the authority of these two cases, the Supreme Court reversed, per curiam, 312 U.S. 666, 61 S.Ct. 827, 85 L.Ed. 1111, the decision in the Nebraska Bridge Supply & Lumber Company case, without adverting to the fact that the tax sale extinguished no personal liability. It would seem that where there is a sale, though involuntary, the existence of personal liability for the debt was considered immaterial.

The cited cases, which go upon the involuntary character of the sale, do not control this one; because here there was a voluntary disposition of property. The taxpayer had no title but it had an interest in the land, for on a contract in writing it had paid one-fourth the purchase price, and was in possession. In equity the seller was the trustee of the title, bound to convey it on full payment. The taxpayer had an investment which was a capital asset under Sect. 117(b). The United States under the original contract held a personal debt against the taxpayer for the contract purchase price. This personal liability was not extinguished by any

of the modifications. By the last the United States gave the taxpayer an option to surrender the taxpayer's rights in the property in return for release from personal liability for the balance of the purchase money. The taxpayer exercised that option in the required way and within the time fixed. By this election we are of opinion that the taxpayer "sold or exchanged" its capital investment for an extinguishment of its personal liability. In a broad sense a sale is any transfer of property for a valuable consideration; but in common speech a sale is a transfer of property for money paid or to be paid, and an exchange is a transfer of property for property or some value other than money. Immediately before the notice was given to the Secretary of the Treasury the taxpayer had an interest in this property and owed the United States a large debt. Immediately after, the property interest was transferred to the United States, and the debt was voided, each expressly in consideration of the other. One value was exchanged for the other. The sale was not rescinded, for that would involve a restoration of status on both sides. The agreement was rather that the purchaser's personal obligation would be surrendered by the United States, and that in consideration thereof the purchaser would release all claim to the property, and the money paid should become the absolute property of the United States. As a new bargain, rather than a mere rescission of the old, we think it amounts to the disposal of a capital asset by a sale or exchange.

Affirmed.