HELVERING, Com'r of Internal Revenue,
v. REBSAMEN MOTORS, Inc.

No. 12154.

Circuit Court of Appeals, Eighth Circuit.
May 27, 1942.

Louise Foster, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Joseph M. Jones, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

John P. Ohl, of New York City (Wright, Gordon, Zachry, Parlin & Cahill and John A. Reed, all of New York City, on the brief), for respondent.

Before SANBORN and WOODROUGH, Circuit Judges, and TRIMBLE, District Judge.

SANBORN, Circuit Judge.

The question in this case is whether the words "gains from the sale of stock" as used in § 351(b) (1) (A) of the Revenue Act of 1934 defining a "personal holding company," c. 277, 48 Stat. 680, 751, 26 U.S. C.A. Int.Rev.Acts, pages 757, 758, include gains derived by a corporation from the final liquidation of a subsidiary corporation.

Congress in the Revenue Act of 1934, § 351(a), imposed a heavy surtax on the adjusted net income of every personal holding company. It was provided, § 351 (b) (1), that a corporation was a "personal holding company" if — "(A) at least 80 per centum of its gross income for the taxable year is derived from royalties, dividends, interest, annuities, and * * *

gains from the sale of stock or securities, and (B) at any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals."

It is conceded that if a distribution received by respondent in October, 1935, from the final liquidation of a wholly owned subsidiary was a gain "from the sale of stock," the respondent was a "personal holding company," but that if the distribution was not such a gain, the respondent was not a "personal holding company."

The respondent is an Arkansas corporation. For some time prior to October 16, 1935, it owned all of the capital stock of the Union Savings Building & Loan Association. The Association was liquidated during 1935, and on October 16, 1935, respondent received all the net assets of the Association, consisting of cash, real estate, real estate mortgages, and accounts receivable. The fair market value of the assets was $146,061.11. The cost basis to respondent of the entire capital stock of the Association was $128,111.62. The respondent therefore derived a gain of $17,-949.49 from the liquidation of this subsidiary. On September 15, 1937, the respondent paid to the Collector of Internal Revenue $4,510.28 for the taxable period May 1, 1935, to December 31, 1935, of which amount $4,157.83 was on account of the surtax imposed by § 351 of the Revenue Act of 1934, and $352.45 was interest thereon. The petitioner determined a deficiency of $725.76. The respondent filed a claim for refund of the entire tax paid and interest, on the ground that it was not a "personal holding company" as defined in § 351(b) (1) of the Revenue Act of 1934. The claim for refund was denied, and the

deficiency was assessed. The respondent appealed to the Board of Tax Appeals, which sustained the contention of the respondent. This petition for review followed.

The Commissioner of Internal Revenue and the Board have been unable to see eye to eye with respect to the meaning of the words "sale of stock or securities" contained in the Congressional definition of a "personal holding company." Section 351 (b) (1) (A) of the Revenue Act of 1934. Treasury Regulations 86, promulgated under the Revenue Act of 1934, contains the following pertinent paragraph:

"Art. 351–2. Classification of a personal holding company. * * * *
    *       *       *       *       *

"(5) Gains from the sale of stock or securities.—The term 'gains from the sale of stock or securities' applies to all gains (including gains from liquidating dividends and other distributions from capital) from the sale or exchange of stock or securities includible in gross income under Title I. * * * *"

The first difference of opinion between the Commissioner and the Board over the meaning of "gains from the sale of stock or securities" arose in Montague, Miles & Co., Inc. v. Commissioner, 38 B.T.A. 144. The taxpayer in that case had received a gain of $700 from a payment to it on a note which it had purchased. If that gain was from a "sale of stock or securities" the taxpayer was a "personal holding company." The Board ruled that the word "sale," as used in § 351(b) (1) of the Revenue Act of 1934, means sale in its ordinary sense, and that the Commissioner was without authority to extend the meaning to include exchange.[1] In the instant

---

[1] The Board said [Montague, Miles & Co., Inc., v. Commissioner, page 149 of 38 B.T.A.]:

"It is our view that the term 'sale' in section 351(b) (1) means a sale in the ordinary sense of the word. In the taxing statutes the terms 'sale' and 'exchange' appear separately in some instances, and in other instances the terms appear in conjunction with each other. But the two terms are not synonymous and have not been confused in the revenue laws. It appears that wherever Congress has intended to apply the terms 'sale' and 'exchange' of property it has written the individual terms into the statute, either alone or in conjunction with each other. If either or both terms

did not cover a wide enough field Congress has then used such additional phrase as 'other disposition' of property. We conclude, therefore, that Congress could not have intended that the term 'sale' in section 351(b) (1) should include 'exchange' within its meaning. It may be, that, for the purposes of section 351 limitation of subsection (b) (1) to 'gains from the sale of stock or securities' left a loophole through which some taxpayers might escape classification as personal holding companies and the surtax imposed on such companies. It appears that Congress recognized this very situation because, in the Revenue Act of 1937, section 351(b) of the then existing law was amended and section 353(b)

case the Commissioner made substantially the same contention before the Board that he made in the Montague, Miles & Co. case, and the Board adhered to its former ruling. 44 B.T.A. 36.

The petition asserts that the Board is wrong and that Congress clearly intended the words "gains from the sale of stock" to include gains from exchanges and liquidations of stock. It seems to be agreed that the words of the statute are not ambiguous, but the petitioner argues that "sale of stock" means sale or exchange of stock, while the Board and the respondent are of the opinion that "sale of stock" means sale of stock.

The argument of the petitioner is, in substance, as follows: That, since § 351 (b) (4) of the Revenue Act of 1934 provides: "The terms used in this section shall have the same meaning as when used in Title I," and § 115(c) of the Act[3] (which is in Title I) provides: "Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock * * *," this means that a gain to a stockholder from the liquidation of a corporation has been given the legal effect of a gain from the sale of stock, and therefore Article 351–2 of Treasury Regulations 86 did not exceed statutory limits in providing that the words "gains from the sale of stock or securities" as used in § 351(b) (1) (A) should apply to all gains from the sale or exchange of stock or securities (including gains from liquidating dividends). The petitioner

points out that the Supreme Court in White v. United States, 305 U.S. 281, 291, 59 S.Ct. 179, 184, 83 L.Ed. 172, ruled that "§ 115(c) requires the tax in case of liquidations to be computed upon the same basis as in case of sales of the stock, * * *" and that that Court used similar language in Hellmich v. Hellman, 276 U.S. 233, 237, 48 S.Ct. 244, 72 L.Ed. 544, 56 A.L.R. 379; and the petitioner argues that Congress in defining a "personal holding company" and referring to "dividends" and "gains from the sale of stock or securities" was using the terms in a broad sense to identify the kind of income which should distinguish such a company for the purpose of the imposition of the surtax; that, since the legal effect for purposes of taxation of the gain received from the liquidation of its subsidiary was the same as though the respondent had sold the stock, the gain must be considered as having arisen from a sale of the stock both under the applicable regulation and the statute; and that when used in a taxing statute the word "sale" may be entitled to a broad meaning. Helvering v. Hammel, 311 U.S. 504, 61 S.Ct. 368, 85 L.Ed. 303, 131 A.L.R. 1481; Helvering v. Nebraska Bridge Supply & Lumber Co., 312 U.S. 666, 61 S.Ct. 827, 85 L.Ed. 1111, reversing 8 Cir., 115 F.2d 288. There is, no doubt, much force in the petitioner's contentions. The reasoning of the Board in the Nebraska Bridge Supply & Lumber Co. case, 40 B.T.A. 40, which this Court affirmed and the Supreme Court reversed, was substantially that which led the Board to disagree with the Commissioner in the

---

of the Revenue Act of 1937 was written to include the term 'exchange.'[2] The 1937 amendment, however, was not retroactive. Reference to the report of the Ways and Means Committee on the revenue laws of 1937 shows that the following explanation for the amendment is given:

"Subsection (b) (of section 353, Act of 1937) includes as personal holding company income gains from the exchange of stock or securities. This is merely a clarifying amendment to carry out the intent of the existing law.

"However, neither the amendment in 1937 nor the explanation thereof is decisive of the question as it arises under the Act of 1934 because there is no am-

biguity in the pertinent provision of the Act of 1934. Cf. Penn Mutual Life Insurance Co. v. Lederer, 252 U.S. 523, [40 S.Ct. 397, 64 L.Ed. 698]; Casey v. Sterling Cider Co., 1 Cir., 294 F. 426.

"We therefore conclude that in the transaction before us the gain petitioner realized from the partial liquidation of the note was not such gain as is covered by section 351 (b) (1) and that, accordingly, that gain does not bring petitioner within the statutory definition of a personal holding company for purposes of the surtax."

[3] 48 Stat. 711, 26 U.S.C.A. Int.Rev. Acts, page 703.

---

[2] "Sec. 353. Personal Holding Company Income.

* * * * *

"(b) Stock and Securities Transac-

tions.—Except in the case of regular dealers in stock or securities, gains from the sale or exchange of stock or securities." 26 U.S.C.A. Int.Rev.Acts, p. 974.

587

instant case. In the Nebraska Bridge Supply & Lumber Co. case, both the Board and this Court thought that the words "losses from sales or exchanges of capital assets," as used in § 117(d) of the Revenue Act of 1934 (relating to deductions for capital losses), 48 Stat. 714, 26 U.S.C.A. Int.Rev.Acts, page 708, did not cover losses resulting from the forfeiture of lands in Arkansas for nonpayment of taxes.

We followed the rule that the use by a legislative body of words having definite meanings creates no ambiguity and that such words are to be taken and understood in their plain, ordinary and popular sense. We have come to realize that that rule is not always a safe guide to follow in construing the language of a taxing statute. United States v. Armature Rewinding Co., 8 Cir., 124 F.2d 589, 591. It is our understanding, however, that the rule is still to be applied unless it can clearly be seen that Congress used the words in question in a broader or different sense than that which would ordinarily be attributed to them. See Foley Securities Corp. v. Commissioner, 8 Cir., 106 F.2d 731, 734, 735.

It may be that, in defining a "personal holding company" in the Revenue Act of 1934, Congress intended the words "gains from the sale of stock" to include gains from the liquidation of a corporation, and that the Board has given the words "gains from the sale of stock" too restricted a meaning. On the other hand, it is apparent that Congress was attempting to segregate from corporations generally, those which were to be regarded as personal holding companies, for the purpose of the imposition of a surtax in the nature of a penalty to prevent such companies from being used to retain income which, if distributed to stockholders, would increase their taxes. See Foley Securities Corp. v. Commissioner, 8 Cir., 106 F.2d 731, 734. It is not unreasonable to believe that Congress, in defining a "personal holding company," spoke with precision and did not intend that corporations which fell outside of the definition of § 351(b) (1) (A), when read literally, should be subjected to the surtax. There is nothing in the pertinent legislative history which demonstrates that Congress clearly intended in 1934 that gains from the exchange of stock or from distributions received in liquidation of stock should be considered in determining whether a corporation was a "personal holding company." Nowhere in the Act of 1934 is the word "sale" defined as including a distribution in liquidation, and all that § 115(c) provides is that, in determining tax liability, such a distribution shall be treated "as in full payment in exchange for the stock." One weakness of the petitioner's position is that Congress did not in its definition of a "personal holding company" refer to "gains from the sale or exchange of stock," although § 351(b) (3) (C), relating to computation of adjusted net income of such companies, provides for the deduction of "Losses from sales or exchanges," which is at least an indication that when the word "sale" was used in § 351(b) (1) (A), it was used advisedly and probably not in the sense of "sale or exchange." We agree with the Board that the fact that in § 353(b) of the Revenue Act of 1937, (c. 815, 50 Stat. 813, 26 U.S.C.A. Int.Rev.Acts, page 974) Congress included "gains from the sale or exchange of stock or securities" in "personal holding company income," is not of controlling significance in determining the meaning of § 351(b) (1) (A) of the Revenue Act of 1934. (See footnote 1 of this opinion.)

The decisions of the Board of Tax Appeals, the members of which are impartial and experienced experts constantly dealing with questions of taxation, should be accorded great respect. This Court is justified in reversing a decision of the Board only when convinced that it was erroneous. See Stern Bros. & Co. v. Commissioner, 8 Cir., 108 F.2d 309, 311. Whatever doubts we may entertain as to the proper construction of § 351(b) (1) (A), we think, should be resolved in favor of the Board's conclusion. Uniformity of construction of taxing acts is important. United States v. Armature Rewinding Co., 8 Cir., 124 F.2d 589, 591. The Board has twice overruled the petitioner's contention as to the meaning of "gains from the sale of stock or securities" as used in § 351(b) (1) (A). The Board may be wrong, as the petitioner contends, but we are not convinced that it is wrong. We think it has reached a justifiable conclusion. It is not our understanding that a taxing statute is only to be read literally when a literal reading favors the Government. See Foley Securities Corp. v. Commissioner, 8 Cir., 106 F.2d 731, 734, and Crooks v. Harrelson, 282 U.S. 55, 60, 51 S.Ct. 49, 75 L.Ed. 156.

One may honestly and reasonably believe that in drafting a taxing act Con-

gress uses the language which most nearly expresses the legislative intent, and that if the language used fails properly to express that intent, corrections should be made by Congressional action and not by Treasury regulations or by judicial construction. This is not to say that the language of such an act should not be accorded its full meaning or should be given an unduly restricted interpretation or one which will defeat a clearly apparent Congressional purpose. It seems to us, however, 'that neither the taxing authorities nor the courts are justified in virtually amending a taxing act because they are of the opinion that Congress may have had or should have had a different intention than that which was expressed in the act. There would seem to be nothing unreasonable in a rule of construction which requires legislative bodies, in enacting taxing statutes, to use language of sufficient clarity to be understood by an ordinarily intelligent taxpayer as well as by those who are required to administer and to interpret the statutes.

The decision of the Board is affirmed.

WOODROUGH, Circuit Judge (dissenting).

Congress provided for the personal holding company surtax involved in this case for the purpose of meeting prevalent tax avoidance through splitting up anticipated large incomes among multiplied holding companies, often called pocketbook corporations. The characteristics common to such corporations are that they are closely owned and get income by passively receiving it, rather than by working for it. Congress accordingly directed its definition of personal holding companies to those features and laid the surtax against those closely held corporations which derive their gross income from royalties, dividends, interest, annuities and gains from the sale of stock and securities. It excepted gains from the sale of stock in the case of regular dealers in stocks. It gave no definition of "sale" but disclosed its intent as to the kind of "sale" by exception covering the case of sales of regular dealers. The context leaves no doubt in my mind that any of the innumerable modes of extinguishing the ownership of one and vesting it in another for a price falls within the broad scope of the word "sale" in the definition so long as the case of regular dealers in stocks is not present.

There was no specific mention in the definition of disposal of stock by complete liquidation of the corporation issuing it, but that particular mode of extinguishing the ownership of one and vesting it in another for a price had already been treated as a sale in the computation of tax in White v. United States, 305 U.S. 281, 59 S.Ct. 179, 83 L.Ed. 172, and Hellmich v. Hellman, 276 U.S. 233, 48 S.Ct. 244, 72 L.Ed. 544, 56 A.L.R. 379, and Congress doubtless assumed the courts would do the same here.

It is necessary to do so in order to uphold the intent of Congress in respect to the taxation of incomes in the upper brackets. Unless gains derived by pocketbook corporations from complete liquidation of stocks owned by them are treated as gains derived from sale of the stock, the income Congress intends to tax may be passed by such liquidations from one pocketbook corporation to another and the very tax avoidance which Congress expressed its intention to prevent is facilitated. I would sustain the tax.