**COREX CORPORATION, dba Quick Corporation of America, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 73–3332.

United States Court of Appeals, Ninth Circuit.

Oct. 7, 1975.

Rehearing Denied Jan. 5, 1976.

Arthur L. Bailey (argued), Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Bernard B. Laven (argued), Los Angeles, Cal., for plaintiff-appellee.

## OPINION

Before CARTER, HUFSTEDLER and GOODWIN, Circuit Judges.

JAMES M. CARTER, Circuit Judge.

This appeal involves a refund suit brought by the Corex Corporation ("Corex") for money paid pursuant to an excise tax assessment under Section 4161 of the Internal Revenue Code of 1954, 26 U.S.C. § 4161. The United States brought a counterclaim for other unpaid excise taxes. Section 4161 imposes upon the sale of fishing gear by the manufacturer, producer, or importer a tax equivalent to ten percent of the price for which it is sold by the taxpayer.

Following a nonjury trial, findings of fact and conclusions of law were entered in favor of the taxpayer. The issue on appeal is whether the appellee Corex or another firm, Jon H. Importing Company ("Jon H."), was the "importer" subject to the tax. We reverse.

"Quick" brand fishing reels and supplies were manufactured in West Germany by Deutsche Angelgeräte Manufaktur ("D.A.M.") and exported to the United States and Canada by Anton W. C. Denker ("Denker"), an export firm located in West Germany. During the years in issue D.A.M. was owned by Rupert and Lotz Kuntz with their mother, Annelisa Kuntz. In July, 1965, Rupert and Lotz, together with Philip Greyshock (a former representative for D.A.M.) incorporated Corex in California, for the purpose of importing fishing equipment and sporting goods. Corex began operations as the exclusive importer of D.A.M. fishing reels and supplies.

Between 1965 and the summer of 1968 Corex continued as the importer. The Gladding Corporation ("Gladding"), a separate and unrelated entity, was the distributor. In June, 1968, Denker (exporter) and Corex (importer) decided to terminate the distribution activities of Gladding. Corex assumed the distribution activities and a new entity, Jon H., was established to take over Corex's importing function. The role of Corex in the formation of Jon H. remains unclear.

Jon H. was an unincorporated association owned by Ruth Nessley and operated by her husband John. John Nessley was also an active officer in the Edward Zerwekh Company ("Zerwekh") a customs brokerage firm. Jon H. had $1000 in capital assets. Following formation, Denker named Jon H. the "exclusive importer" of D.A.M. products and Jon H. designated Corex as the "sole distributor". Although Jon H. could designate another distributor if Corex failed to exercise its option, during the years relevant to this suit Corex received all supplies "imported" by Jon H.

Transactions between Denker, Jon H. and Corex would begin when Denker prepared and sent its invoice, a special customs invoice, and a packing list of the shipment, to Jon H. Copies were sent to Zerwekh. Jon H. would notify Corex, which in turn sent to Jon H. its (Corex's) purchase order for the entire shipment. Jon H. then prepared and sent its purchase order to Denker.

Zerwekh, the brokerage firm, handled most of the details related to the physical importation of D.A.M. products. Zerwekh arranged for the customs entry (declared the value and duty rates, and

submitted documents to Customs officials), caused the merchandise to be released from Customs, arranged for the delivery to Corex, and paid all expenses (including import duties, freight and docking charges, and insurance) and billed Jon H.

To finance the importation Denker extended credit, which was unsecured, to Jon H. for the entire amount of the purchase. Jon H. extended an equal amount of credit to Corex, but Jon H. did require an advance payment of a portion of its invoice. The advance payment roughly equalled the expenses Jon H. incurred through Zerwekh. Jon H. paid its importation expenses upon receiving Corex's advance payment.

Other than the advance payments used to pay importation expenses, Jon H. did not receive any payments from Corex during the first eight months of the relationship. During the same period Jon H. made no payments to Denker. In April, 1969, Corex finally began making substantial payments to Jon H. immediately Jon H. would forward the same amount to Denker.

Jon H. received a profit averaging only 1% of sales, about $13,000 for 1968 and 1969. The small profit resulted, according to the plaintiff, from the need to keep its selling price low so that Quick products could be priced competitively. The services for which Jon H. received the profit, in addition to forwarding payment to Zerwekh and Denker, were activities of "promotion": one allowance of $354 was granted to Corex in an attempt to promote the sales of spools with line, Nessley once recommended to Corex that it make a greater effort with respect to its retail outlets, and Nessley suggested to Corex that small reels, rods, and lines be offered together as an inexpensive package.

The trial judge held that the dealings were sales by Jon H., as the importer, to Corex, who purchased as a distributor. The sales were found to be arm's-length transactions and Jon H. was held to be acting as a principal and not as agent for Corex.

The appellant contends that the trial court erred by placing undue emphasis upon the formalities of the transactions: that Denker's customs invoice, carriers' certificates, and bills of lading showed Jon H. as the purchaser or the party to be notified; that the customs release orders named Jon H. as the importer of record; and that Corex was not named in any of the documents and did not take title until the merchandise was delivered to Corex's possession. The judge's findings were silent on (1) the capitalization of Jon H., (2) how importation was actually financed, (3) who first dealt with the exporter, (4) what ties existed between appellee and the manufacturer, and (5) whether Jon H. served a purpose other than procuring appellee's orders.

█ In this appeal this court is not bound by a misapplication of law to the evidentiary findings by the court below. *United States v. Armature Rewinding Co.,* 124 F.2d 589 (8 Cir. 1942). To determine if a misapplication has occurred we must identify the relevant test and ascertain if the trial court properly applied the test.

The determination of who is the importer subject to tax has been undertaken only rarely. The major cases are *Import Wholesalers Corp. v. United States,* 368 F.2d 577, 177 Ct.Cl. 493 (1966) and *Sony Corp. of America v. United States,* 428 F.2d 1258, 192 Ct.Cl. 822 (1970). According to *Import,*

". . . the determination of who is the 'importer' under the pertinent statute does not turn on technical rules such as the law of sales, but rather on the realities as to who arranges as principal and not as agent for the articles to be imported into the United States." 368 F.2d at 583.

In *Import* the court held that the plaintiff, a Volkswagen dealer, was the actual "importer", rather than the Deeren Trading Corporation ("Deeren") as contended by the plaintiff, although Deeren had entered the chain of title and was named in the import documents. The evidence in *Import* showed that one

Kirkiles, with two others, decided to enter the car business in Miami, Florida. They formed the plaintiff corporation and established credit with a local bank. Kirkiles approached a friend, Petrides, and suggested that the latter take over and incorporate the Deeren Trading Co. in New York. Deeren had no assets.

Subsequently Deeren, as seller, and plaintiff, as purchaser, entered into a written agreement whereby plaintiff agreed to purchase from Deeren between 100 and 300 cars per month for a competitive market price (which included the invoice cost and all importation expenses) plus $5 for each automobile. All expenses were to be paid by plaintiff and the $5 per car was to be paid directly to Deeren.

The court held that the "overall substance of the importation" was that the formalities were, as a matter of fact, subordinate to the supply by plaintiff of all funds necessary to accomplish the importation. Deeren had no credit and supplied none of the funds, and was paid an insufficient sum for assuming any risk. Deeren's only act was to place plaintiff's orders with the seller. The court concluded that the plaintiff was the "inducing and efficient cause" of the importation, and therefore was the importer. 368 F.2d at 585.

On similar, but not identical, facts in *Sony,* a different result was reached. The evidence showed that Sony of Tokyo ("Sony T"), desiring to stimulate sales in the United States, entered into a sales agency agreement with one Gross, a noted entrepreneur. Sony T also designated the Agrod Corp. ("Agrod"), owned by Gross, as exclusive distributor. Agrod initially subdistributed to Delmonic International Corporation; Delmonic was later replaced by Sony of America ("Sony A"). Sony T controlled Sony A.

The usual practice was that Sony A placed an order with Agrod, and Agrod then ordered from Sony T. Sony A opened an assignable letter of credit in Agrod's favor, which Agrod immediately assigned to Sony T. Agrod arranged to deliver or store the merchandise and Agrod made all other payments (freight, customs, insurance, and bonds).

The court held that Agrod was the importer. Agrod functioned as an importer: it had extensive knowledge of the United States market, advised Sony T as to which vessels to use for shipment, selected a national advertising agency, and continuously promoted Sony products. Agrod's employees, "highly knowledgeable" in the business, were active in relationships with distributors of other products. Finally, the fact that Agrod was the importer before the existence of Sony A illustrated that the dealings between Sony A, Agrod, and Sony T were bona fide.

In comparison to *Import* and *Sony* the district court in this case did not pursue an in-depth examination of the substance of the relations between the parties. The court did not mention the following facts, most of which were undisputed:

1. Corex was owned by D.A.M., the manufacturer, and was the importer initially.

2. Jon H. had no other clients. Nessley, operator of Jon H., was a full time customs broker for Zerwekh.

3. Jon H. was established for the purpose of performing Corex's importing function.

4. Jon H. had minimal assets and was paid a small commission.

5. Unsecured credit was extended by Denker to Jon H. All brokerage fees were paid by funds provided by Corex.

6. Jon H. performed minimal promotional activities.

▇ The trial court did not pursue an inquiry into the substance of the transactions, as required by *Import* and *Sony.* A careful weighing of all the factors was necessary; a mere recitation of the contract formalities was insufficient. Applying *Import* and *Sony,* Jon H. was not the importer: Jon H. did not perform substantial promotional activities, Jon H. bore none of the usual risks, performed

no function other than as a conduit, and earned little profit.[1]

Reversed.

---

1. *See* Revenue Ruling 67–209, 1967–1 Cum. Bull. 179. This ruling gives a hypothetical case which is similar to this action: X, a foreign corporation, and Y, a subsidiary marketing X's products in the United States, arranged with Z for importation. Z is an unrelated corporation. Z is required to deliver all of X's products to Y.

Y submits an order to Z, who forwards the order to X. All documents show Z to be the importer. Y pays Z's brokerage expenses, X's invoice price, plus a 2% "profit" for Z. Z is not an importer because he doesn't assume any of the risks of a typical merchant importer.