*Decision will be entered under Rule 50.*

BERT B. BURNQUIST, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

B. J. PRICE and BELLE M. PRICE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 101259, 101260. Promulgated May 14, 1941.

*Pressly R. Baldridge, Esq.,* for the petitioners.
*R. C. Whitley, Esq.,* for the respondent.

#### OPINION.

SMITH: These proceedings, consolidated for hearing, involve income tax deficiencies for 1936 as follows:

| Petitioner | Docket No. | Deficiency |
|---|---|---|
| Bert B. Burnquist | 101259 | $656.76 |
| B. J. Price and Belle M. Price | 101260 | 1,180.24 |

The petitioners allege that the respondent erred in the determination of the deficiencies by refusing to allow as an ordinary loss, rather than as a capital loss, the deduction for the calendar year 1936 of an amount of $17,588.16 representing the depreciated cost of a one-half interest in a farm located in Palo Alto County, Iowa, which was deeded without consideration to the Metropolitan Life Insurance Co., the owner of the first mortgage on the farm.

The facts relating to each petition have all been stipulated and such stipulations of fact constitute our findings of fact and are incorporated herein by reference.

The petitioners Bert B. Burnquist and B. J. Price are both engaged in the general practice of the law at Fort Dodge, Iowa. Belle M. Price is the wife of B. J. Price and the two filed a joint income tax return for 1936. Hereinafter the husband and wife will be referred to as one petitioner. On March 15, 1937, each of the petitioners filed an individual income tax return with the collector at Des Moines, Iowa, Bert B. Burnquist claiming a net loss of $9,646.46, and B. J. Price a net loss of $5,699.80. In such returns each claimed the deduction of an ordinary loss of $23,500 from the voluntary deeding by Bert B. Burnquist of his interest in a farm located in Palo Alto County, Iowa. In the determination of the deficiencies the respondent held that the loss was a capital loss, that it was sustained by a partnership composed of Bert B. Burnquist and B. J. Price, and that each was entitled to deduct from gross income under section 117 (d) of the Revenue Act of 1936 only $1,000.

On March 1, 1920, petitioners Bert B. Burnquist and B. J. Price purchased a 400-acre farm in Palo Alto County, Iowa, for a total consideration of $120,000. Title to the farm was taken in the name of petitioner Bert B. Burnquist, but it was understood between Burnquist and Price that each had an undivided one-half interest in the farm and that they would share equally in the profits and losses arising from the ownership thereof. This understanding was carried out throughout the period when Bert B. Burnquist held title to the farm. It is stipulated that:

Insofar as the farm property in Palo Alto County is concerned, B. B. Burnquist and B. J. Price have never had a partnership agreement; have never held themselves out as partners, and have never had a partnership bank account, nor have they been treated as partners by the Metropolitan Life Insurance Company or other parties having dealings with them relative to the farm. They have refused to file a partnership income tax return when requested to do so by the Revenue Agent. * * *

The petitioners Bert B. Burnquist and B. J. Price paid for the farm by means of a first mortgage of $40,000, a second mortgage of $60,000, and cash of $20,000. They compromised the second mortgage by the payment of $33,500 in cash and they paid $1,000 toward the retirement of the first mortgage, making the total investment in the farm $54,500. Throughout this entire transaction the title to the farm remained in the name of Bert B. Burnquist and the first mortgage on the farm was executed by Bert B. Burnquist and his wife.

The total investment of the petitioners in the Palo Alto County farm was, as above stated, $54,500. Depreciation on the farm build-

ings and the farm during the period of ownership from March 1, 1920, to May 6, 1936, was sustained in the amount of $19,323.67. The net investment in the farm, after deducting depreciation sustained to May 6, 1936, was in the amount of $35,176.33, of which one-half, or $17,588.16, was the investment of each petitioner.

The operation of the farm did not prove to be financially successful, and on February 8, 1933, there were due and unpaid certain installments of principal on the first mortgage owned by the Metropolitan Life Insurance Co., and advancements by the company for taxes. On that date petitioner Burnquist and his wife entered into an agreement with the Metropolitan Life Insurance Co. whereby, in exchange for grant of possession of the 400-acre farm, the insurance company agreed to release the petitioner Burnquist from all personal liability on the mortgage and to look entirely to the property for payment of the mortgage. The agreement provided in part as follows:

In consideration of such grant of possession, the Company covenants and agrees that in the event the above mentioned mortgage is foreclosed, it will, as plaintiff, bid at special execution sale held pursuant to foreclosure proceedings, the entire amount of the mortgage claim, satisfying in full any judgment that may be obtained in such action.

It is understood and agreed that the Company shall apply upon the mortgage indebtedness any balance of the rents and proceeds remaining after payment of all costs in connection with the management and cultivation of said real estate, and the taxes, insurance and repairs, and in the event of redemption of said real estate from special execution sale, the amount required to redeem shall be credited with such net returns.

It is further understood and agreed that at such time prior to foreclosure proceedings as the Company receives in full, whether by way of returns from said real estate or voluntary payment by the Owner, of all items then delinquent under said mortgage and reimbursement for all costs, expenses or advancements theretofore made or incurred in connection with said real estate and pursuant to this agreement, all rights of the Company hereunder shall terminate and possession of said premises shall be restored to the Owner.

It is further understood and agreed that in the event of the termination of this agreement, said Owner will approve and accept any lease that may have been executed by the Company, and will permit any tenant thereunder to continue in the undisturbed and peaceable possession of said real estate until the termination of such lease.

The right of possession, together with the power and authority hereinabove granted to the Company shall continue so long as the above described mortgage remains an enforceable lien against said real estate, and during the period of redemption under any foreclosure proceedings, unless this agreement is sooner terminated as hereinabove provided.

Nothing herein contained shall prejudice the rights of the Company under said mortgage or be construed to bar the institution of foreclosure proceedings thereon, at the election of said Company.

As conditions relating to farm properties did not improve, petitioner Burnquist and his wife, on May 6, 1936, deeded the farm to E. H. Lougee, agent for the Metropolitan Life Insurance Co., who, in

turn, deeded the farm to the Metropolitan Life Insurance Co. There was no consideration paid by either Lougee or the Metropolitan Life Insurance Co. to Bert B. Burnquist and his wife for said deed.

By virtue of the deeding of the farm property to E. H. Lougee and by him to the Metropolitan Life Insurance Co., these petitioners each sustained a loss in the amount of $17,588.16 during the calendar year 1936 in a transaction entered into for profit and the loss was not compensated for by insurance or otherwise.

The petitioners and the respondent are agreed that the investment of the two petitioners in the Palo Alto County farm was a capital asset and that the loss sustained upon the deeding of the property by Burnquist to Lougee in 1936 resulted in a loss to each petitioner of $17,588.16.

The sole question submitted to the Board for decision is whether the loss sustained by each petitioner was an ordinary loss deductible from ordinary income, or a loss from the sale or exchange of a capital asset within the meaning of section 117 (d) of the Revenue Act of 1936. That section provides, in part, as follows:

SEC. 117. CAPITAL GAINS AND LOSSES.

*     *     *     *     *     *     *

(d) LIMITATION ON CAPITAL LOSSES.—Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges. * * *

The factual situation is that on May 6, 1936, each petitioner had an investment in the Palo Alto County farm of $17,588.16. Burnquist, who held the legal title to the property of both the petitioners, had given a mortgage upon the property at the time of its acquisition to the Metropolitan Life Insurance Co. On February 8, 1933, there was still owing upon the mortgage $39,000 plus certain amounts for advances made by the insurance company for the payment of taxes, etc. On February 8, 1933, Burnquist entered into an agreement with the Metropolitan Life Insurance Co. whereby the company, in consideration of immediate possession, agreed upon any foreclosure of the property to bid the property in at a sufficient amount to satisfy in full any judgment that might be obtained in the foreclosure action. Thereafter, neither of the petitioners had any monetary liability in respect of the farm. Under the agreement petitioners had the right at any time prior to the foreclosure proceeding to pay the mortgage debt and any profits realized by the insurance company from the operation of the farm were to be credited to the account of the petitioners; also, if the property was sold as a result of the judgment in the foreclosure action the petitioners had the right to redeem within the statutory period.

It is the petitioners' contention in these proceedings that after February 8, 1933, they had no liability in respect of the mortgage indebted-

ness and that when on May 6, 1936, Burnquist and wife gave what was in effect a quitclaim deed upon the property there was no consideration therefor; hence, that there was no sale or exchange of the property in 1936. It is the respondent's contention that the petitioners had a continuing liability on the property up to May 6, 1936, and that the consideration for the execution of the quitclaim deed was a relief from that liability.

In two decisions rendered January 6, 1941, the Supreme Court held that a loss sustained by a taxpayer upon foreclosure sale of his interest in real estate was a capital loss subject to section 117 (d) of the Revenue Act of 1936, on the ground that the term "sales" applies to foreclosure sales as well as to voluntary sales. *Helvering* v. *Hammel*, 311 U. S. 504, and *Electro-Chemical Engraving Co.* v. *Commissioner*, 311 U. S. 513.

We think it clear that if the petitioners had been relieved from liability for debt as a result of the execution of the deed on May 6, 1936, the consideration for the deed would constitute the transaction an "exchange" within the meaning of section 117 (d). *Rogers* v. *Commissioner* (C. C. A., 9th Cir.), 103 Fed. (2d) 790.

From the plain facts in these proceedings the petitioners had no continuing liability on the farm mortgage after the execution of the agreement of February 8, 1933. That seems to us to be the meaning of the agreement. The respondent argues that because the concluding paragraph of the agreement provided that "Nothing herein contained shall prejudice the rights of the Company under said mortgage or be construed to bar the institution of foreclosure proceedings thereon, at the election of said Company", the petitioners were not relieved from liability upon the mortgage. That paragraph means, however, only that the life insurance company is not to be precluded from instituting foreclosure proceedings at any time. It does not mean, as the respondent contends, that the petitioners had a continuing liability under the mortgage.

In our opinion the execution of the quitclaim deed on May 6, 1936, was not an "exchange" of property within the meaning of section 117 (d) of the Revenue Act of 1936. The situation here is essentially the same as that which obtained in *Commonwealth, Inc.*, 36 B. T. A. 850; *Sherwin A. Hill, Administrator*, 40 B. T. A. 376; *Realty Operators, Inc.*, 40 B. T. A. 1051; *Park Chamberlain*, 41 B. T. A. 10; *Warner G. Baird*, 42 B. T. A. 970; and *Commissioner* v. *Hoffman* (C. C. A., 2d Cir.), 117 Fed. (2d) 987, affirming 40 B. T. A. 459. We hold that each petitioner is entitled to deduct from the gross income of 1936 an ordinary loss of $17,588.16.

*Decisions will be entered under Rule 50.*