T.C. Memo. 1997-382


UNITED STATES TAX COURT


THOMAS LOUIS MITCHELL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10147-95.               Filed August 20, 1997.


Thomas Louis Mitchell, pro se.

<u>Thomas L. Fenner</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Respondent determined the following deficiencies in, and additions to, petitioner's Federal income taxes:

|       |            | Additions to Tax |              |
|-------|------------|------------------|--------------|
| Year  | Deficiency | Sec. 6651(a)(1)  | Sec. 6654(a) |
| 1985  | $9,696     | $2,424           | $556         |
| 1986  | 5,077      | 1,117            | 236          |
| 1987  | 5,974      | 1,296            | 344          |
| 1988  | 8,206      | 1,952            | 514          |
| 1989  | 2,195      | 148              | 56           |
| 1990  | 10,448     | 2,144            | 71           |
| 1991  | 9,984      | 2,496            | 574          |
| 1992  | 6,556      | 1,639            | 286          |
| 1993  | 6,786      | 1,697            | 296          |

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The parties filed a stipulation of settled issues, which was amended by agreement of the parties at trial. The sole issue remaining after concessions is the amount and character of losses sustained by petitioner on the foreclosure of various partnership interests in 1987.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. We incorporate by this reference the stipulation of facts, the supplemental stipulation of facts, and the attached exhibits. At the time of filing the petition, petitioner resided in Round Rock, Texas.

Ownership and Foreclosure

In 1982, petitioner acquired limited partnership interests in a partnership named 66 Farmout, both individually and under the name M & A Interest. In 1983, petitioner acquired limited partnership interests in three partnerships: Dime Box No. II, Dime Box No. III, and CAG Farmout. Petitioner owned interests in Dime Box No. III individually and under the name M & A Interest. We will refer to 66 Farmout, Dime Box No. II, Dime Box No. III, and CAG Farmout collectively as the partnerships. The partnerships were engaged in the activity of drilling oil and gas wells. Prior to the year in issue, petitioner used portions of his interests in the partnerships as collateral for loans. Petitioner used his interests in 66 Farmout as collateral for one loan in an amount not in the record[1] and used his interests in the remaining partnerships as collateral for another loan in the amount of $100,000. Petitioner owned the partnerships, and used the partnership interests as collateral, in the following percentage amounts:

---

[1] In his trial memorandum, petitioner asserts that the loan for which the 66 Farmout interests served as collateral was equal to $15,000. We have no sworn testimony or other evidence to support this claim, and in any event the amount of the loan is unimportant to the resolution of the issue in this case.

| Partnership | 66 (Pet.) | 66 (M&A) | DB II | DB III (Pet.) | DB III (M&A) | CAG |
|---|---|---|---|---|---|---|
| % Owned | 3% | 2% | 4% | 4% | 1% | 2% |
| % Used as collateral | [1]3% | [1]2% | 4% | 3.75% | [1].5% | 1.5% |

[1] Respondent has conceded that petitioner used as collateral his entire interest in 66 Farmout (both the interest held in his name and the interest held in the name of M & A Interest), and 50 percent of his interest in Dime Box No. III held in the name of M & A Interest.  See infra note 6.

Thus, petitioner pledged 100 percent of 66 Farmout held in petitioner's name, 100 percent of 66 Farmout held in the name of M & A Interest, 100 percent of Dime Box No. II, 93.75 percent of Dime Box No. III held in petitioner's name, 50 percent of Dime Box No. III held in the name of M & A Interest, and 75 percent of CAG Farmout.  In 1987, the holders of the loans foreclosed on the portions of petitioner's interests in the partnerships that secured the loans.  At the time of foreclosure, the fair market value of petitioner's foreclosed interests in the Dime Box No. II, Dime Box No. III, and CAG Farmout partnerships, collectively, was $60,000.

Basis and Capital Account

Prior to the foreclosures, the only property petitioner contributed to the partnerships was cash.  Similarly, the only property the partnerships distributed to petitioner was cash.  The following table shows adjustments to petitioner's capital

accounts in the partnerships during the year in issue as reflected on the Schedules K-1:

| Name | 66 (Pet.) | 66 (M & A) | DB II | DB III (Pet.) | DB III (M&A) | CAG |
|---|---|---|---|---|---|---|
| Cap. acct. beginning 1987 | ($761.00) | ($508.00) | $373.00 | $3,051.00 | $763.00 | $2,109.00 |
| Ord. income | $1,634.68 | $1,089.79 | $683.32 | $679.90 | $110.26 | $688.60 |
| Distributions | ($1,539.09) | ($1,026.03) | ($1,056.32) | ($3,891.52) | ($169.04) | ($2,383.06) |
| Cap. acct. ending 1987 | ($665.41) | ($444.24) | 0.00 | ($160.62) | $704.22 | $414.54 |
| % Cap. ownership beginning 1987 | 3% | 2% | 4% | 4% | 1% | 2% |
| % Cap. ownership ending 1987 | [1]3% | [1]2% | 0% | .25% | [1]1% | .5% |

[1] The Schedules K-1 are inconsistent with the findings as to the amount pledged as collateral and foreclosed on, as shown in the previous table. See infra note 6.

For each partnership interest, the beginning capital account balance reflects the intangible drilling costs (IDC) incurred and deducted by the partnership.

                              OPINION

Amount of Loss

We must first decide the amount of the loss that petitioner incurred as a result of the foreclosure of his partnership interests.[2]  In the notice of deficiency, respondent took the

---

[2] Respondent concedes that petitioner had a loss equal to his basis rather than a gain, even though respondent also concedes that the fair market value of petitioner's interests in Dime Box No. II, Dime Box No. III, and CAG Farmout exceeded his bases in those interests.  Cf. Correra v. Commissioner, T.C. Memo. 1997-356.  The finding of fact as to the fair market value of petitioner's foreclosed interests in the Dime Box No. II, Dime Box No. III, and CAG Farmout partnerships, collectively, is based
                                              (continued...)

position that petitioner's loss deduction was limited to his basis in the partnership interests, which respondent computed using the Schedules K-1. We accept the approach taken by respondent.

Section 165(a) permits a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." Sec. 165(a). The amount of the deduction is limited to the amount of the basis of the property prescribed by section 1011 for determining the loss from the sale or other disposition of the property. Sec. 1.165-1(c), Income Tax Regs. Thus, the key question concerns the bases of the properties involved.

Petitioner agrees that his loss deduction is limited to basis, but disputes respondent's method for computing basis. Petitioner first argues that for each partnership interest he is entitled to a basis equal to the fair market value of that partnership interest. Petitioner argues that when he pledged the partnership interests as collateral, he relinquished total control over those interests for the duration of the loan. This, in petitioner's view, caused the basis to be equal to fair market value. Since the fair market value of the partnership interests was equal to $60,000 at the time of the foreclosure, petitioner

---

[2](...continued)
on a stipulation of the parties. The parties did not stipulate, or present any other evidence, as to the fair market value of petitioner's interests in the 66 Farmout partnership.

believes he is entitled to a $60,000 loss deduction.[3]

All of the properties with respect to which petitioner sustained losses were partnership interests. In general, the adjusted basis of a partner's interest in a partnership equals the amount of money and the adjusted basis of property contributed by the partner to the partnership, increased by the partner's distributive share of partnership income and certain other amounts, and decreased by distributions and the sum of the partner's distributive share of partnership losses and certain other expenditures. Sec. 705(a). Petitioner's contentions notwithstanding, there is no provision in the Code allowing a partner a stepped-up basis in his partnership interest as a result of its being pledged as collateral. Thus, we reject petitioner's argument that the basis of each partnership interest was equal to its fair market value.[4]

Petitioner next argues, in the alternative, that respondent's computation of basis is wrong in any event. First, petitioner argues that respondent improperly relied on the Schedules K-1 in computing basis. Second, petitioner argues that respondent double counted IDC in making that computation.

---

[3] At trial, petitioner also argued that he was entitled to a loss deduction of $40,000 -- the difference between the $100,000 loan secured by the Dime Box No. II, Dime Box No. III, and CAG Farmout partnership interests and the $60,000 fair market value of those interests at foreclosure. On brief, petitioner merely maintains that the loss is equal to $60,000.

[4] For the same reason, we reject petitioner's argument at trial, identified supra note 3, that his loss was equal to $40,000.

Petitioner argues that it was arbitrary for respondent to rely on the Schedules K-1 to compute basis, especially in light of the instructions to Form 1065, which indicate that the capital account information provided on the Schedule K-1 may not be determinative of basis.  The instructions to Form 1065 merely reflect that basis and capital account are frequently not equal, as, for example, where property (as distinguished from cash) is contributed to or distributed from a partnership.  In such circumstances, taxpayers may not rely on capital account as a substitute for basis.  However, these instructions do not foreclose the use of Schedules K-1 in appropriate circumstances to compute basis.  Most importantly for petitioner, if we did not rely on the Schedules K-1, there would be insufficient evidence of basis on this record, and petitioner would not be entitled to any loss deduction.  See Blocker v. Commissioner, T.C. Memo. 1992-725, affd. without published opinion 25 F.3d 1043 (5th Cir. 1994).

In the circumstances of this case, the Schedules K-1 provide an accurate measure of basis.  Although contributions and distributions of property (as distinguished from cash) can cause the capital account and basis in a partnership interest to diverge,[5] no such divergence occurred in this case because

---

[5] In general, to determine a partner's capital account balance, the fair market value of property that is contributed by or distributed to the partner is added to or subtracted from his existing capital account balance.  See, e.g., secs. 1.705-1(a)(1), 1.704-1(b)(2)(iv)(b), Income Tax Regs.  By contrast, to
(continued...)

petitioner contributed only cash to the partnerships and received only cash as distributions.  Moreover, petitioner agrees that the Schedules K-1 accurately reflect the amount of the beginning capital account balances, income, distributions, and ending capital account balances for the year in issue.  Therefore, each capital account balance accurately reflects petitioner's basis in the respective partnership.

Petitioner also argues that his adjusted basis should not be reduced by his distributive share of IDC.  Petitioner agrees that all of the partnerships took deductions for IDC and that the capital account balances on the Schedules K-1 reflect a downward adjustment due to IDC.  The following table sets out the beginning capital account balances for the year in issue for each of the partnership interests with and without the effects of IDC:

| Name | Cap. Acct. With IDC | Cap. Acct. W/Out IDC |
| --- | --- | --- |
| Dime Box II | $373 | $7,183.74 |
| Dime Box III (Pet.) | 3,051 | 20,547.59 |
| Dime Box III (M&A) | 763 | 5,136.67 |
| CAG Farmout | 2,109 | 15,460.28 |
| 66 Farmout (Pet.) | (761) | 11,675.89 |
| 66 Farmout (M&A) | (508) | not available |

In petitioner's view, however, because IDC is counted in calculating each partnership's income, it is not proper to count

---

[5](...continued) determine a partner's adjusted basis in the partnership interest, the adjusted basis of contributed or distributed property is added to or subtracted from his adjusted basis in the partnership interest.  See, e.g., secs. 722, 733.

IDC in calculating petitioner's basis in each partnership.  Thus, petitioner argues that respondent's reliance on the Schedules K-1 results in a double counting of IDC, improperly reducing petitioner's basis.  This view is incorrect.

In general, deductible items reduce both the partnership's taxable income and each partner's basis in the partnership. Pursuant to section 703, a partnership computes its taxable income in the same manner as an individual, except that certain items must be stated separately and certain deductions are not allowed.  IDC is an item that must be stated separately.  Sec. 1.702-1(a)(8)(i), Income Tax Regs.  Thus, in determining his income tax, petitioner must take into account his distributive share of loss due to IDC.  Sec. 702(a).  Pursuant to section 705(a), a partner's adjusted basis in his partnership interest is increased by the partner's distributive share of taxable income of the partnership and decreased by the partner's distributive share of losses of the partnership.  Thus, petitioner's adjusted basis in each partnership interest was properly increased by petitioner's distributive share of taxable income of the partnership, net of petitioner's distributive share of IDC.  The deduction for IDC affects both petitioner's ultimate distributive share of partnership income and petitioner's basis in the partnership interest.  Thus, reliance on the Schedules K-1 does not result in an improper double counting.

On brief respondent relied on the Schedules K-1 in computing petitioner's basis by taking the capital account balance at the

beginning of the year and adding partnership income received during the year. Respondent's computation represents a concession of sorts, because it produces the largest possible basis to which petitioner may be entitled, since it does not account for any distributions that may have occurred during the year. We will accept respondent's computation of basis in this case. Petitioner's challenges are unavailing, and petitioner has offered no other evidence from which we might compute basis. Thus, we accept respondent's approach, and petitioner's basis in each of the partnership interests is set out in the following table:

| Name | Basis (Beginning Cap. Acct. + Income) |
|---|---|
| Dime Box No. II | $1,056.32 |
| Dime Box No. III (Petitioner) | 3,730.90 |
| Dime Box No. III (M & A) | 873.26 |
| CAG Farmout | 2,797.60 |
| 66 Farmout (Petitioner) | 873.68 |
| 66 Farmout (M & A) | 581.79 |

Further, in some cases only portions of petitioner's interests were actually pledged as collateral and foreclosed on, so that petitioner's loss deduction is limited to the following amounts:[6]

_____

[6] Respondent uses the Schedules K-1 stipulated into evidence to compute basis, and petitioner agrees as to the accuracy of the Schedules K-1. However, in three instances the Schedules K-1 fail to reflect the effect of the foreclosures upon petitioner's ownership of certain partnership interests; namely, the 66 Farmout interest held in petitioner's name, the 66 Farmout

(continued...)

| Name | Basis | % of P's Interest Foreclosed On | Loss |
|------|-------|------------------|------|
| Dime Box No. II | $1,056.32 | 100% | $1,056.32 |
| Dime Box No. III (Pet.) | 3,730.90 | 93.75 | 3,497.72 |
| Dime Box No. III (M & A) | 873.26 | 50 | 436.63 |
| CAG Farmout | 2,797.60 | 75 | 2,098.20 |
| 66 Farmout (Pet.) | 873.68 | 100 | 873.68 |
| 66 Farmout (M & A) | 581.79 | 100 | 581.79 |

Character of Loss

Finally, we must decide the character of the loss. Gain or loss on the sale or exchange of a partnership interest is capital gain, except in certain circumstances involving unrealized receivables and inventory. Secs. 741, 751. Respondent concedes that the foreclosure of each partnership interest was a sale or exchange under which loss was realized and hence recognized.

---

[6](...continued)
interest held in the name of M & A Interest, and the Dime Box No. III interest held in the name of M & A Interest. According to the Schedules K-1, petitioner owned the same percentage of each of these three partnerships at the end of 1987 as he did at the beginning, which suggests that no foreclosures occurred with respect to these partnership interests during the year. However, the parties agree, and we have found, that foreclosures occurred during 1987 with respect to these interests. The Schedules K-1 are, in this respect, inconsistent. The Schedules K-1 notwithstanding, respondent clearly concedes, and we have found, that petitioner suffered losses premised on the foreclosure of the following: His entire interest in 66 Farmout held in his name, his entire interest in 66 Farmout held in the name of M & A Interest, and half of his interest in Dime Box No. III held in the name of M & A Interest.

Sec. 1001(a)-(c); <u>Helvering v. Hammel</u>, 311 U.S. 504 (1941). Petitioner argues that the IRS regulations and publications state that the sale or exchange of an interest in oil or gas produces ordinary, not capital, gain or loss. However, the interests foreclosed herein were not interests in oil or gas, but partnership interests. Petitioner has presented no evidence of unrealized receivables or inventory held by the partnerships, and thus the losses in issue in this case are capital losses.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.